880 P.2d 322

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Harry WHITE, Defendant–Appellant.**

**No. 15086.**

Court of Appeals of New Mexico.

June 27, 1994.

Certiorari Denied Aug. 10, 1994.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals from convictions for two counts of vehicular homicide and one count of great bodily injury by vehicle. He contends that (1) he was deprived of his right to a speedy trial by the ten and one-half months between arrest and trial, and (2) he was deprived of due process of law when the district court instructed the jury on a mandatory presumption. Issues raised at earlier stages of the appeal but not briefed are deemed abandoned. *State v. Ramos*, 115 N.M. 718, 720, 858 P.2d 94, 96 (Ct.App.), *cert. denied*, 115 N.M. 602, 856 P.2d 250 (1993). We disagree with Defendant's speedy-trial issue, and we find his due process issue to be without a factual basis in the record of this case. Accordingly, we affirm.

### SPEEDY TRIAL

■ Although the nature of the charges in this case could make for a case of intermediate complexity, the parties do not dispute on appeal that the facts of this particular homicide and great bodily injury by vehicle case were relatively simple. Thus, the ten-and-one-half-month delay from Defendant's arrest, when he was held to answer to the charges and was restrained by bail conditions, to trial was sufficient to trigger the balancing of the speedy-trial factors outlined in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *Salandre v. State*, 111 N.M. 422, 428, 806 P.2d 562, 568 (1991). Those factors are the length of the delay, reasons for the delay, defendant's assertion of the right, and prejudice to the defendant. *Id.* at 425, 806 P.2d at 565.

■ The length of delay is ten and one-half months, barely a month and a half over the minimum length of time that the Supreme Court indicated could ever be presumptively prejudicial so as to trigger further inquiry. *See id.* at 428, 806 P.2d at 568. Thus, this factor will not have a large practical effect on the balancing. *See id.* at 429, 806 P.2d at 569.

The reasons for the delay include: (1) one month of delay caused by both Defendant and the State excusing a magistrate and another magistrate's recusal; (2) three months of delay for the new magistrate to set the preliminary hearing; (3) one month of delay for the State to choose to indict Defendant and for arraignment; (4) four and one-half months of delay prior to the first trial setting, caused by the judge's impending surgery, recovery time, and resultant backlog in his docket; and (5) one month of delay caused by defense counsel's realization that he had a conflict of interest, his motion to withdraw, and new counsel's need for extra time to prepare for trial.

■ Some of this delay was attributable to Defendant and thus is not weighed against the State. This includes some of the delay at the beginning of the case when magistrates were being excused, as well as the delay at the end of the case when Defendant himself sought and received new counsel who needed more time to prepare. *See Work v. State*, 111 N.M. 145, 147, 803 P.2d 234, 236 (1990), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991); *State v. Grissom*, 106 N.M. 555, 562, 746 P.2d 661, 668 (Ct.App.), *cert. denied*, 106 N.M. 439, 744 P.2d 912 (1987), *and criticized on other grounds in Salandre*, 111 N.M. at 430–31, 806 P.2d at 570–71. Most of the remainder of the delay appears to have been caused by normal caseload pressures, which weighs less heavily against the State, *see Zurla v. State*, 109 N.M. 640, 643, 789 P.2d 588, 591 (1990), or by the judge's surgery and recovery time, which does not weigh against either side. *See State v. Manes*, 112 N.M. 161, 168–69, 812 P.2d 1309, 1316–17 (Ct.App.), *cert. denied*, 112 N.M. 77, 811 P.2d 575, *and cert. denied*, 502 U.S. 942, 112 S.Ct. 381, 116 L.Ed.2d 332

(1991). *See generally* Kristine C. Karnezis, *Illness or Incapacity of Judge, Prosecuting Officer, or Prosecuting Witness as Justifying Delay in Bringing Accused Speedily to Trial—State Cases,* 78 A.L.R.3d 297 (1977).

■ Defendant specifically asserted his right to a speedy trial two days before trial. While assertion at this late date is timely under *Barker, Zurla,* 109 N.M. at 644, 789 P.2d at 592, it is not entitled to much weight. *State v. Garcia,* 110 N.M. 419, 424, 796 P.2d 1115, 1120 (Ct.App.) (when right to speedy trial is not asserted until most of the delay has passed, this factor is not entitled to much weight), *cert. denied,* 110 N.M. 282, 795 P.2d 87 (1990).

Defendant, having been released on bond, did not suffer oppressive pretrial incarceration. Defendant's wife testified about the symptoms of Defendant's anxiety—loss of weight, inability to sleep, and inability to be attentive at work. However, it was not clear whether these symptoms were caused by the charges or by the fact that Defendant was in an accident caused by his driving on the wrong side of the road with a blood-alcohol content of two to three times the legal limit that killed two people and seriously injured another. Defendant did not contend that there was any impairment in his defense. *Zurla,* 109 N.M. at 647, 789 P.2d at 592 (absent evidence that defendant's defense was impaired by delay, the State's burden to show lack of prejudice is considerably lighter).

The Supreme Court noted that *Salandre* was a close case. *Salandre,* 111 N.M. at 431, 806 P.2d at 571. The delay in this case is shorter than in *Salandre.* Some of the delay here was attributable to Defendant and some was caused by valid reasons, whereas in *Salandre* all delay appeared to be unjustified. Both Defendant and Salandre timely asserted the right in a way to weigh slightly in their favor. There was some impairment to the defense in *Salandre* which the State did not rebut whereas such is not an issue in this case. If *Salandre* was close and the balance tipped in the defendant's favor there largely because of the prejudice factor, we must conclude that the balance tips in the State's favor here due to the factors enumerated above, particularly the lack of prejudice, but also the fact that the delay was not overly long and much of it was explained and justifiable. We affirm the trial court's denial of Defendant's speedy-trial motion.

*DUE PROCESS*

■ Defendant was charged with two counts of homicide by vehicle and one count of great bodily injury by vehicle, all in violation of NMSA 1978, Section 66–8–101(C) (Cum.Supp.1993). The indictment accused Defendant of committing the crime "while driving under the influence of intoxicating liquor" or in the alternative "while having one-tenth of one percent or more by weight of alcohol in his blood." Prior to trial, the indictment was amended to delete the alternative provision.

It does not appear that homicide by vehicle or great bodily injury by vehicle contrary to Section 66–8–101(C) may be committed by simply having one-tenth of one percent by weight of alcohol in one's blood. Section 66–8–101(C) requires the person to be "under the influence of intoxicating liquor" or "under the influence of any drug" or driving recklessly. That statute does not appear to contemplate exclusive reliance on NMSA 1978, Section 66–8–102(C) (Cum.Supp.1993) (driving with a certain blood-alcohol content).

The jury in this case was nonetheless instructed that the elements of the crimes were that "defendant operated a motor vehicle while under the influence of intoxicating liquor" and "defendant thereby caused the death [or great bodily harm of the victims]." The jury was also instructed that:

A person is "under the influence of intoxicating liquor" when as a result of consuming alcoholic beverage he is less able, to the slightest degree, either mentally or physically, or both, to exercise the judgment and coordination safely to drive a vehicle.

*See* SCRA 1986, 14–243 (Cum.Supp.1993). It was also instructed that:

Test results showing the percentage of weight of alcohol in the blood of the defendant at the time that the test was given have been introduced into evidence. These test results are to be considered for

the purpose of determining whether or not defendant's blood at the time of the incident contained one-tenth (.10%) or more by weight of alcohol. *If a person's blood contains one-tenth of one percent (.10%) of alcohol or more, he is under the influence of intoxicating liquor.*

(Emphasis added.)

This instruction is not included in the Uniform Jury Instructions. It was represented by the State as SCRA 1986, 14–242. That representation was not accurate due to substantial modifications made by the prosecutor, which appear to make the instruction conform to the alternative charge that was deleted prior to trial. To compound the apparent error, SCRA 14–242 had been withdrawn by our Supreme Court prior to the time of trial. SCRA 1986, 14–242 (Cum. Supp.1993). However, Defendant's attorney did not object to the offered instruction at trial.

Defendant contends that the effect of the emphasized sentence was to take from the jury its ability to determine an essential element of the crime (driving "under the influence" without the irrebuttable presumption inherent in the erroneous instruction). Therefore, Defendant presents this issue in the context of fundamental error under *State v. Orosco,* 113 N.M. 780, 784–86, 833 P.2d 1146, 1150–52 (1992), and *State v. Osborne,* 111 N.M. 654, 662–63, 808 P.2d 624, 632–33 (1991), or in the context of an impermissible mandatory presumption, *see* SCRA 1986, 11–302(C), that must be analyzed for harmless error under *Sullivan v. Louisiana,* —— U.S. ——, —— – ——, 113 S.Ct. 2078, 2081–83, 124 L.Ed.2d 182 (1993), and *Yates v. Evatt,* 500 U.S. 391, 401–06, 111 S.Ct. 1884, 1892–94, 114 L.Ed.2d 432 (1991), *overruled on other grounds by Estelle v. McGuire,* 502 U.S. 62, 73 n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991). However, there is no factual basis to support his arguments, and in contending otherwise Defendant's briefs are misleading.

The State relies on *State v. Simpson,* 116 N.M. 768, 772–73, 867 P.2d 1150, 1154–55 (1993), for the proposition that there was no error in the instructions in this case. Because we conclude that the error was harm-less, we may assume, without deciding, that Defendant is correct in his contention that there was error in the instructions. However, in accordance with *State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994), we wish to state the reservations we harbor about the State's reliance on *Simpson.*

Simpson contended that the withdrawn instruction, SCRA 14–242, allowing the jury to infer being under the influence of intoxicating liquor when the blood-alcohol content was above a certain percentage, was erroneously given in his vehicular homicide case because it established a presumption that had been deleted by the legislature. The Supreme Court disagreed on two grounds. First, the instruction did not establish a presumption, but rather simply allowed the jury to infer intoxication. Second, the Court viewed the instruction given as harmless because the jury could have been instructed on the irrebuttable presumption contained in Section 66–8–102(C) (unlawful to drive with blood-alcohol content of .10%).

In so ruling, however, the Court did not consider that, of the three ways to commit driving while intoxicated contrary to Section 66–8–102, only two appear to be incorporated into Section 66–8–101(C). Perhaps the Court did not consider this because Simpson may not have been convicted under Section 66–8–101(C). *See Simpson,* 116 N.M. at 769, text at n. 1, 867 P.2d at 1151, text at n. 1 (indicating that Simpson was convicted under Section 66–8–101(A) & (B)). Moreover, *Simpson* may not be applicable to this case inasmuch as Defendant was originally charged in the alternative with homicide and great bodily injury by vehicle by driving with a blood-alcohol content of .10%, but the indictment was amended to delete the alternative charge.

However, we need not decide the precise applicability of *Simpson* to this case because, even if Defendant is correct in his contention that the emphasized instruction created a mandatory irrebuttable presumption contrary to his rights under New Mexico and federal law, *see Orosco,* 113 N.M. at 785, 833 P.2d at 1151, such an error was entirely harmless under the facts of this case. Therefore, we proceed to decide this case

under the assumptions that (1) homicide or great bodily injury by vehicle requires a determination that Defendant was driving while under the influence of intoxicating liquor in the sense that his judgment or coordination was impaired, and (2) the instructions given allowed the jury to find this element on the basis of blood-alcohol content alone.

In *Osborne,* 111 N.M. at 663, 808 P.2d at 633, the Supreme Court held that the error of failing to instruct on an essential element of the crime was fundamental and not harmless because the jury instruction failed to require the jury to resolve an issue "raised in the evidence at trial." In *Orosco,* however, the Court found a similar error to be not fundamental because the element was not at issue. *Orosco,* 113 N.M. at 783–84, 833 P.2d at 1149–50.

In so ruling upon a failure-to-instruct issue in *Orosco,* the Court relied upon the analysis of the United States Supreme Court in mandatory-presumption cases. *Id.* at 784–86, 833 P.2d at 1150–52. A recent United States Supreme Court case on this very issue requires the appellate court to determine

> whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption. Since that enquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption. It is only when the effect of the presumption is comparatively minimal to this degree can it be said ... that the presumption did not contribute to the verdict rendered.

*Yates,* 500 U.S. at 404–05, 111 S.Ct. at 1893–94. In *Yates,* there was some evidence rebutting the presumed fact, and thus the Court could not say beyond a reasonable doubt that the faulty instruction did not contribute to the verdict. *Id.* at 407–12, 111 S.Ct. at 1895–97. *Compare Osborne,* 111 N.M. at 663, 808 P.2d at 633 (where there was a factual dispute on the element omitted by the instructions) *with Orosco,* 113 N.M. at 783–84, 833 P.2d at 1149–50 (where there was no factual dispute as to that element).

Thus, under the appropriate fundamental-versus-harmless-error analysis contained in either the New Mexico cases or the United States Supreme Court cases, the inquiry in this case is whether there is any factual issue raised at trial as to the element of Defendant's driving while intoxicated. Defendant acknowledges that the State presented evidence, apart from the blood-alcohol-data presumption, that established he was under the influence of intoxicating liquor. Nonetheless, Defendant maintains that the State presented no evidence "from which the jury could infer a relationship between that behavior and the impairment of his ability to safely operate a motor vehicle, other than the testimony regarding blood/alcohol levels." Defendant contends that the State "presented no evidence relating the testimony about intoxication to a finding that [Defendant] was 'under the influence' or to the impairment of his ability to safely operate a motor vehicle."

We assume that the type of evidence Defendant complains was absent was necessary to show that Defendant was operating a vehicle while under the influence of intoxicating liquor. However, the evidence was undisputed that he was, and his counsel admitted as much in closing argument. The doctor, who saw Defendant as well as his victims in the hospital after the accident, testified that Defendant was intoxicated, that his alcohol level was .297% which is three times the legal limit, that Defendant's speech was slurred and he was unsteady on his feet, and that Defendant was processing information slowly due to his alcohol-impaired cognitive functions. A police officer, who came into contact with Defendant after the accident, testified that Defendant was staggering, his speech was slurred, he had a strong odor of alcohol, and he was intoxicated.

A toxicologist testified extensively about Defendant's blood-alcohol level in particular and blood-alcohol levels in general. Defendant's .297% was a medical sample that would be comparable to a .22% to .24%. The legal limit of .10% was chosen based on many

tests done on humans that show that at .10%, and sometimes even lower, performance is impaired. Humans cannot perform the tasks that they should be able to perform at that level of intoxication. They cannot perform tests that require divided attention, as driving does. Their judgments are bad. It takes longer to react at .10%. At .22% or .24%, which was Defendant's level, the effects are profound; the ability to drive is significantly worsened. Reaction times are very low. Visual capacity is bad. One's eyes do not react to headlights the way they should, and the inability to react sometimes leaves one momentarily blinded. Peripheral vision is very narrow, almost like tunnel vision. One cannot look at the speedometer and then at the road and have one's eyes refocus.

In closing argument, the prosecutor argued that there was no doubt Defendant was intoxicated at better than two times the legal limit. Defense counsel conceded that it was "obvious" Defendant was guilty of DWI. In fact, defense counsel recounted at some length the toxicologist's testimony and how it related to this case, emphasizing the profound negative effects on driving including general impairment, blindness, and inability to process information. Defense counsel concluded that Defendant was "oblivious" to his surroundings and therefore could not have had the general criminal intent necessary to commit the crimes.

Defendant does not direct our attention to any evidence whatsoever contradicting the evidence that he was extremely intoxicated or contradicting the negative effects such intoxication had on his ability to drive. Under these circumstances, there is no fundamental error under *Osborne* and *Orosco,* and any constitutional error created by a mandatory presumption on one element of the crime was harmless beyond a reasonable doubt under *Yates.* Finally, we do not agree with Defendant that the error created by the mandatory presumption on one element of the crime constitutes the sort of "structural defect" in the constitution of the trial mechanism that defies harmless-error analysis. *See Sullivan,* —— U.S. at —— –——, 113 S.Ct. at 2082–83 (distinguishing between jury-instruction error of creating a mandatory presumption on one element of the crime, which does not constitute a structural defect, and jury-instruction error on burden of proof that pervades all elements and vitiates all of the jury's findings, which does constitute a structural defect).

Defendant also briefly contends that the emphasized instruction amounts to prosecutor misconduct because the instruction was requested by the prosecutor and that his counsel's failure to object to it amounted to ineffective assistance of counsel. These latter contentions in essence argue that any error created by the prosecutor is misconduct for which there need be no objection and any error to which defense counsel does not object is ineffective assistance that can be raised for the first time on appeal. These ipse dixit contentions, without any analysis of the legal elements of the theories of prosecutor misconduct or ineffective assistance of counsel, are frivolous and will not be further discussed. *Cf. Wilburn v. Stewart,* 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990) (issues raised in passing that are unsupported by cited authority are not considered).

The convictions are affirmed.

IT IS SO ORDERED.

DONNELLY and BOSSON, JJ., concur.