This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **No. 32,152**

**TOM ELVIN ROSS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}     Defendant appeals from the district court's judgment and sentence, which convicted him, pursuant to a conditional plea agreement, of aggravated DWI (third

offense).  The district court denied Defendant's motion to dismiss for violation of his right to speedy trial in April 2011.  In his plea agreement, Defendant reserved the right to challenge that ruling.  He filed a timely notice of appeal on April 18, 2012.

**BACKGROUND**

{2}     Both sides have largely agreed to the facts at issue in this case.  Defendant was initially arrested on September 20, 2005.  He was released on a $10,000 bond later that day.  He remained on bond for nineteen months, until he was indicted on April 10, 2007.  Defendant did not appear at arraignment in May 2007 because notice was sent to the wrong address.  At that time, a bench warrant was issued for his arrest.  He was picked up three years later, in 2010.

{3}     A series of pre-trial conferences and then guilty plea hearings were reset before Defendant filed a motion to dismiss on speedy trial grounds on March 28, 2011.  A hearing was held on April 22, 2011, and Defendant's motion was denied.  Subsequently, a trial date was set, but Defendant eventually pleaded guilty to aggravated DWI on February 7, 2012.  He reserved his right to appeal on speedy trial grounds.

**DISCUSSION**

{4}     To determine the merits of a speedy trial motion, we weigh four factors:  (1) the length of delay, (2) the reasons for delay, (3) the time and manner of Defendant's

assertion of his right to speedy trial, and (4) prejudice to Defendant as a result of delays. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In our consideration of these factors, we defer to the district court's factual findings but review the constitutional question *de novo*. *State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113. The determination as to whether a violation has occurred will be specific to the circumstances of each particular case. *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272.

**Length of Delay**

{5} The length of delay does not itself create a presumption that Defendant's speedy trial rights have been violated; it serves as a "threshold determination" as to whether a speedy trial analysis applies. *State v. Garza*, 2009-NMSC-038, ¶ 21, 146 N.M. 499, 212 P.3d 387. *Garza* creates three categories for such threshold determinations: "twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases." *Id.* ¶ 2. The twelve-month "simple" case rule applies in this case, described by the State as "a regular DWI case." The district court applied this standard in its analysis. Regardless of the complexity of this case, the delay exceeded eighteen months and therefore a speedy trial analysis has been triggered under any standard. *State v. Ochoa*, 2014-NMCA-065, ¶ 4, 327 P.3d 1102, *cert. granted*, 2014-NMCERT-006, 328 P.3d 1188; *State v. Fierro*, 2012-NMCA-054,

¶ 36, 278 P.3d 541. Both parties conceded this. {6} For purposes of measuring the length of delay, we note that the right attaches "when the defendant becomes an accused, either at the time of arrest or upon the issuance of an indictment or information." *State v. Laney*, 2003-NMCA-144, ¶ 10, 134 N.M. 648, 81 P.3d 591. The right attaches at arrest unless the defendant is released without restraints or restrictions. *See State v. Hill*, 2005-NMCA-143, ¶ 12, 138 N.M. 693, 125 P.3d 1175 (holding that speedy trial rights did not attach during a period in which charges had been dismissed without prejudice); *State v. Sanchez*, 1989-NMCA-001, ¶ 1, 108 N.M. 206, 769 P.2d 1297. This remains true even when the defendant has been released on bond if the conditions of release require personal court appearances and prohibit out-of-state travel. *Salandre v. State*, 1991-NMSC-016, ¶ 15, 111 N.M. 422, 806 P.2d 562, *holding modified on other grounds by Garza*, 2009-NMSC-038.

{7} In this case, Defendant was released on bond on September 21, 2005, but his bond contained certain conditions that directly mirror those in *Salandre*: he was required to make personal appearances in court; and he was prohibited from leaving the state. The district court improperly excluded the period between arrest and indictment from the speedy trial analysis, stating that it would only account for this period if the State had been intentionally delaying to get a tactical advantage. As *Salandre* makes clear, however, the time between arrest and indictment does accrue

for speedy trial purposes under these circumstances. 1991-NMSC-016, ¶ 15. Therefore, we add the nineteen months that elapsed between Defendant's arrest and his indictment to the total length of delay.

{8}     "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. Defendant argues that the total time between /his initial arrest and his trial date was extraordinary, amounting to over five years, and therefore that lengthy period should weigh very heavily against the State. For three of those years, however, Defendant did not appear in court and indeed had a bench warrant issued for his arrest. Time will not accrue for speedy trial purposes if a defendant is at liberty, even if a bench warrant has been issued without his knowledge. *State v. Jacquez*, 1994-NMCA-166, ¶ 19, 119 N.M. 127, 888 P.2d 1009 (stating that although a bench warrant was issued, the defendant was unaware of it and therefore suffered no impairment of his liberty). The length of delay began to accrue again once Defendant was arrested on the bench warrant in 2010. *See id.* ¶ 20.

{9}     Nonetheless, even with the exclusion of the three years during which Defendant made no appearances and unknowingly had a bench warrant issued against him, nineteen months alone significantly exceeds the normal triggering point for simple cases, which is twelve months; this weighs "heavily" in Defendant's favor when we consider the *Barker* factors. *Fierro*, 2012-NMCA-054, ¶ 36.

**Reasons for Delay**

{10} Our Supreme Court established in *Garza* that reasons for delay fall into three major categories: bad faith, negligence, and actual justification. 2009-NMSC-038, ¶ 25-27. Each category carries a different weight for purposes of *Barker* analysis. Bad faith weighs "heavily," *Garza*, 2009-NMSC-038, ¶ 25; "negligent or administrative delay" weighs in favor of the defendant, but not as heavily, *id.* ¶ 26; and in cases where a "valid reason" exists, the delay is justified and does not weigh against either party. *Id.* at ¶ 27. In this case, the reasons for delay vary significantly.

{11} No reason for the delay between Defendant's arrest and his indictment could be established at the hearing, and the record in its entirety contains no further explanation. Defendant did not establish any bad faith or impermissible purpose on the State's part. Nevertheless, the State concedes that it bears the responsibility for this portion of the delay. For that reason, these nineteen months fall into the second category of negligence and weigh against the State. *Id.* ¶ 26.

{12} Between the arraignment date in 2007 and Defendant's second arrest three years later, it appears that Defendant was not aware of any required appearances. Notices had been sent to the incorrect address, and indeed continued to be misdirected even after his arrest in 2010. The wrong address came from the police report; Defendant

6

apparently provided it at some point during his original arrest. Defendant stated during the hearing that he had in fact resided at the address at some point previously.

{13} The district court noted that Defendant apparently gave the bonding agency his correct address, but that the document filed by the bonding agency does not typically go to the district attorney's office. Therefore, the State had no knowledge of an alternate address and no way of contacting Defendant for this period. "The state cannot be held responsible for any delay prior to the point where it was notified of [the] defendant's whereabouts." *State v. Tarango*, 1987-NMCA-027, ¶ 27, 105 N.M. 592, 734 P.2d 1275, *overruled on other grounds by Zurla v. State*, 1990-NMSC-011, ¶ 25, 109 N.M. 640, 789 P.2d 588. During that time when the defendant failed to appear, the delay was attributable to him. *State v. Talamante*, 2003-NMCA-135, ¶ 14, 134 N.M. 539, 80 P.3d 476. This remains true even if he was not aware of his obligations. *Jacquez*, 1994-NMCA-166, ¶ 19. These three years thus do not weigh in Defendant's favor in the *Barker* calculation.[1]

---

[1] Three years is directly attributable to both the district court and the State's failure to diligently utilize information indicating Defendant's correct address and telephone number that was readily available from the court file. It is the responsibility of both the State and the court to bring Defendant to trial expeditiously. Bail bonds are employed to insure a Defendant's presence. Since the State is charged with constructive knowledge of the court file, *see Zurla*, 1990-NMSC-011, ¶ 15 n.2, and the district court knew of the bond, the persistent use of the incorrect address cannot weigh against the Defendant. The delay, however, is not sufficiently weighty, and Defendant has not shown sufficient prejudice for us to reverse the district court's denial of his speedy trial motion.

7

{14}     After Defendant was arrested in May 2010, he again posted bond and was released. He was arraigned on May 24, and a guilty plea hearing was set for October 15. On October 15, 2010, Defendant vacated the plea and informed the State of his speedy trial issue. He took no further action regarding that motion, and the State offered another plea in February 2011. The case was again set for a guilty plea hearing in March, but at that time Defendant rejected the plea and presented his motion regarding the speedy trial to the court. The motion was not properly filed until March 28, 2011. A hearing was then set for April 22.

{15}     After the district court denied Defendant's motion, he failed to either accept or reject the State's plea offer; the State consequently filed a motion for a trial date and setting on June 29, 2011. The trial date was set for September 12. On that date, the matter was set for a guilty plea hearing. The plea hearing was twice reset, once by Defendant for medical reasons, before Defendant pleaded guilty on February 7, 2012.

{16}     Almost all the delay attributable to the State occurred before Defendant's indictment. After the pre-trial conference in 2010, Defendant had been afforded the opportunity for a trial date but initiated alternate plea proceedings and then vacated his plea and expressed the desire to file a speedy trial motion instead. In assessing the possible speedy trial violation, the district court measured the time elapsed between

8

Defendant's arrest in May and his plea date in October 2010 and determined that five months was not "an inappropriate amount of time" for matters of this kind.

**{17}** The record suggests that the multiple rescheduled pre-trial conferences and plea hearings beginning in October 2010 stem from ongoing plea negotiations and Defendant's rejections of the offers presented; this time does not weigh in his favor automatically. *State v. Eskridge*, 1997-NMCA-106, ¶ 15, 124 N.M. 227, 947 P.2d 502 (stating that the delays caused by plea negotiations "are themselves not a factor to be held against either party"). Responsibility for delay during plea negotiations is a factual determination to be made by the lower court. *State v. Stock*, 2006-NMCA-140, ¶ 28, 140 N.M. 676, 147 P.3d 885. In this case, the court decided this delay should weigh "a little heavy against the [d]efense," as Defendant rejected a plea in October stating that there might be a speedy trial claim, but made no effort to file a motion for several months.

**{18}** Thus, the only delay that weighs against the State occurred between arrest and indictment, and that does not weigh as heavily as delay caused by bad faith.

**Time and Manner of Assertion of Right**

**{19}** In order for a speedy trial issue to be considered on appeal, it must be raised in the trial court and a ruling must be made. *State v. Rojo*, 1999-NMSC-001, ¶ 50, 126 N.M. 438, 971 P.2d 829. "Defendants are required to make a demand for a speedy

9

trial in order to assert the right at a later time." *State v. Stefani*, 2006-NMCA-073, ¶ 18, 139 N.M. 719, 137 P.3d 659. Defendant properly preserved his right to appeal on speedy trial grounds.

{20} For purposes of weighing Defendant's assertion of this right for *Barker* analysis, we consider "the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Spearman*, 2012-NMSC-023, ¶ 31 (internal quotation marks and citation omitted). In cases in which a defendant adequately asserts his right, the weight may still be mitigated if his protestation was "not impressive or aggressive." *Id.* ¶ 33.

{21} In this case, Defendant first claimed to assert his right to speedy trial in October 2010, but he filed no motion and took no further action for several months. He attempted to present a speedy trial motion to the court on March 9, 2011, but did not properly and officially file the motion until weeks later, on March 28. Beginning with his October 15, 2010 decision to vacate his guilty plea, Defendant effectively acquiesced to delay in the next five months by failing to file any speedy trial motion and twice setting plea hearings only to reject the plea when he appeared. He did not "aggressively" defend his rights during this period. *Id.* ¶ 33.

{22} The most significant period of delay, as previously discussed, took place between Defendant's arrest and indictment, from 2005 to 2007. Defendant made no

10

apparent attempt to expedite the matter during that time; indeed, in his hearing on this matter, Defendant argued to the district court that the assertion factor was not "real heavy either way." While any protestation from Defendant weighs against the State for purposes of this factor, Defendant did only what was adequate for the preservation of his right—and therefore this factor must weigh only minimally, if at all, in his favor.

**Prejudice**

{23} The absence of prejudice to a defendant will fulfill the state's burden to overcome the presumption of prejudice, even if the other *Barker* factors weigh against the state. *State v. Hayes*, 2009-NMCA-008, ¶ 16, 145 N.M. 446, 200 P.3d 99. "[The d]efendant does bear the burden of production on this issue, and his failure to do so greatly reduces the [s]tate's burden." *State v. Urban*, 2004-NMSC-007, ¶ 18, 135 N.M. 279, 87 P.3d 1061. Even in cases in which the length of delay was otherwise extreme, if significant portions of the delay may be attributed to the defendant, those portions "temper the prejudice to [the d]efendant." *State v. Maddox*, 2008-NMSC-062, ¶ 37, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Spearman*, 2012-NMSC-023.

{24} To demonstrate prejudice, "[the] defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect [him]." *State v.*

*Montoya*, 2011-NMCA-074, ¶ 11, 150 N.M. 415, 259 P.3d 820. *Barker* identified three potential sources of prejudice caused by delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of the defense. 407 U.S. at 532. Of the three, the impairment of the defense will be the most important. *Urban*, 2004-NMSC-007, ¶ 17.

{25}     Oppressive pretrial incarceration is rarely demonstrated by defendants who are released on bond during the period of delay. *See, e.g.*, *State v. O'Neal*, 2009-NMCA-020, ¶ 28, 145 N.M. 604, 203 P.3d 135 (stating that the defendant released on bond was not prejudiced despite a prohibition on out-of-state travel); *State v. White*, 1994-NMCA-084, ¶ 7, 118 N.M. 225, 880 P.2d 322 ("[The d]efendant, having been released on bond, did not suffer oppressive pretrial incarceration."). In one case, *State v. Kilpatrick*, the defendant was successful in demonstrating oppressive incarceration while on bond as a result of three particular conditions on release: (1) prohibition on leaving the county, (2) requirement to apprise his attorney of his whereabouts and any changes in address, and (3) obligatory personal appearances at his attorney's office every week. 1986-NMCA-060, ¶ 22, 104 N.M. 441, 722 P.2d 692. We have construed *Kilpatrick* narrowly such that it will not apply to defendants who endure such conditions of release for only a "short time." *Zurla*, 1990-NMSC-011, ¶ 21. In this case, Defendant was released on bond immediately following both of his arrests

12

and was never subject to any of the conditions listed above. Thus, he cannot be said to have suffered from oppressive pretrial incarceration.

{26} Defendant has further conceded that he suffered minimal anxiety or concern as a result of the delay, largely because he was not aware of any proceedings that occurred between his initial arrest in 2005 and his second arrest pursuant to the bench warrant in 2010. As defense counsel informed the district court, "for a period of time when this warrant was outstanding, [Defendant] didn't know anything about it. He obviously didn't worry about it, because he didn't know there was any problems that he had to deal with that way." No one testified to Defendant's anxiety or any negative consequences he may have suffered physically or emotionally as a result of the delay. Defendant has not made any showing of prejudice by anxiety.

{27} The last form of prejudice refers to the impairment of the defense. Any claims with respect to such prejudice, such as forgotten testimony or lost witnesses, would have to be substantiated by a direct showing; otherwise, all such claims would be speculative. *State v. Lucero*, 1977-NMCA-108, ¶ 10, 91 N.M. 26, 569 P.2d 952. Defendant has not made any showing that the delay negatively impacted witness testimony or other aspects of the case against him; the district court concluded that the State gained no "tactical advantage" as a result of the delay. Therefore, there was no evidence elicited demonstrating any impairment to Defendant.

**{28}** The district court correctly stated in Defendant's hearing, "I find no actual or substantial prejudice at all. I don't find there's any undue oppressive incarceration. There's not been, I think, any kind of extreme anxiety regarding the accusation. There's no prejudice to the [d]efense on the merits of the case." Defendant made no showing to the contrary, as was his obligation, so no weight may be granted to this factor without speculation. *Garza*, 2009-NMSC-038, ¶ 39.

**Application of Factors**

**{29}** Defendant argues that *State v. Marquez*, 2001-NMCA-062, 130 N.M. 651, 29 P.3d 1052, should be dispositive in his case. We find it to be factually distinguishable regarding the factors of both assertion and prejudice and improperly applied as to the factors of length and justification for delay.

**{30}** In *Marquez*, the defendant asserted his right at "several stages" of the proceedings, protesting early on in the process and objecting to the state's requests for extension of time. *Id.* ¶ 21. Defendant in this case made one objection on speedy trial grounds before waiting months to file a motion on the issue. He properly preserved his right, but the similarities to *Marquez* end at that.

**{31}** The prejudice factor also weighed in Marquez's favor. He was subject to more stringent conditions of release than was Defendant, limited in his travel to the county rather than the state. *Id.* ¶ 27. In *Marquez* , the defendant argued that he had suffered

14

economic loss amounting to oppressive incarceration when he lost a job opportunity while awaiting trial; we weighed this factor in his favor, though not "as heavily in his favor as he wishe[d] us to do." *Id.* ¶ 29. In a case with "normal bond restrictions," Defendant will have to make specific showings of actual prejudice. *See Garza*, 2009-NMSC-038, ¶ 37. In addition to having a less restrictive release than *Marquez* and presenting no evidence of economic loss or other difficulties stemming from the delay, Defendant failed to show any impairment to his defense and affirmatively denied suffering anxiety for a significant period between his first and second arrests because he had not been aware that his case remained open.

{32}    As to the factors of length of and reason for delay, some aspects of the law have simply changed since the time of that case. The defendant in *Marquez* suffered an eighteen-month delay; at that time, the threshold for speedy trial violations in simple matters was nine months. 2001-NMCA-062, ¶ 12. As we noted in *Marquez*, "[i]n considering this factor, we must consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* (internal quotation marks and citation omitted). Since that time, the minimum has increased to twelve months, altering the weight we afford to the delay in Defendant's case. Additionally, in *Marquez* the delays caused by the state's negligence and administrative delay weighed "heavily" against the state. *Id.* ¶ 15. Indeed, the

15

"overburdened court docket" and other bureaucratic reasons for delay were judged "intolerable" and significantly impacted the analysis. *Id.* ¶ 31. Since *Garza*, however, delays of that kind weigh less heavily. 2009-NMSC-038, ¶ 26.

{33} The length of delay between Defendant's initial arrest and indictment, a period of nineteen months, weighs heavily in Defendant's favor. The other three factors, however, do not. The reasons for delay weigh against the State as to the pre-indictment delay, but not heavily. *See id.* The remainder of the delay is largely neutral or not attributable to the State, with a portion weighing against Defendant. Defendant's assertion of his right was adequate for preservation but was not "aggressive," and in fact much of the delay following his second arrest in 2010 apparently stems from his repeated rejection of plea offers. *See Spearman*, 2012-NMSC-023, ¶ 33. It would not be in keeping with the underlying purpose of the speedy trial right to permit defendants to string along plea negotiations in order to generate a violation. *State v. Moreno*, 2010-NMCA-044, ¶ 28, 148 N.M. 253, 233 P.3d 782 ("[W]here a defendant causes or contributes to the delay, or consents to the delay, he may not complain of a denial of the right to a speedy trial." (alteration, internal quotation marks, and citation omitted)). For these reasons, Defendant's assertion of his right weighs neutrally. Finally, Defendant has demonstrated no prejudice in either of the three general categories for prejudice: oppressive

16

incarceration, anxiety, or impairment to his defense.  Without such a particularized showing, we will not speculate as to the possible prejudicial impact of the delay on the defendant.  *Garza*, 2009-NMSC-038, ¶ 35.

{34}     As our Supreme Court observed in *Garza*, "The heart of the right to a speedy trial is preventing prejudice to the accused."  *Id.* ¶ 12.  While affirmative proof of prejudice is "not essential to every speedy trial claim," *Doggett v. United States*, 505 U.S. 647, 655 (1992), a case that lacks any showing of particularized prejudice will only be presumed to meet that requirement "if the other *Barker* factors weigh heavily in the defendant's favor." *Garza*, 2009-NMSC-038, ¶ 39.  In this case, there has been no showing of prejudice, and the other three factors do not overcome that obstacle.

**CONCLUSION**

{35}     For the reasons stated above, we hereby affirm the district court's ruling on Defendant's motion to dismiss for speedy trial violation.

{36}     **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief  Judge**

17

_____

**MICHAEL E. VIGIL, Judge**