This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**EUSEBIO JASPER,**
**Defendant-Appellant.**

Docket No. A-1-CA-34704
COURT OF APPEALS OF NEW MEXICO
April 23, 2019

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY, Stephen K. Quinn, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Eran Sharon, Assistant Attorney General, Santa Fe, NM for Appellee

Law Offices of Jennifer J. Wernersbach, P.C., Jennifer J. Wernersbach, Albuquerque, NM for Appellant.

**JUDGES**

M. MONICA ZAMORA, Chief Judge. WE CONCUR: LINDA M. VANZI, Judge J. MILES HANISEE, Judge

**AUTHOR:** M. MONICA ZAMORA

**MEMORANDUM OPINION**

**M. ZAMORA, Chief Judge.**

**{1}** Eusebio Jasper (Defendant) appeals his conviction on charges of first degree criminal sexual penetration of a child under thirteen (CSP I), in violation of NMSA 1978, Section 30-9-11(D)(1) (2009), and second degree criminal sexual penetration of a minor by the use of force or coercion on a child thirteen to eighteen years of age (CSP II), in violation of Section 30-9-11(E)(1). Defendant argues that the district court erred by: (1)

impermissibly allowing the State to impeach Defendant with a prior conviction and inadmissible evidence; and (2) failing to properly instruct the jury on the charge of CSP II. We affirm Defendant's convictions.

## BACKGROUND

**{2}**     Victim moved in to her grandmother's home in Clovis, New Mexico when she was around eleven years old. Grandmother's boyfriend, Defendant, also lived in the one-bedroom house with them. When Victim was twelve years old, Defendant began to have sexual intercourse with her. This abuse continued past Victim's thirteenth birthday.

**{3}**     Victim testified that she did not want to have sexual intercourse with Defendant, but felt that she had to because he had threatened to hurt her and her family. Victim later testified that she told a lie about what Defendant did to her because she was afraid that Defendant would carry out his threats.

**{4}**     Victim learned she was pregnant at age thirteen during a visit with a doctor for stomach pain. Victim told her doctor that Defendant got her pregnant. Immediately after Victim gave birth, law enforcement swabbed Victim and the baby for DNA testing. Law enforcement sought a DNA swab from Defendant, which he gave voluntarily. At trial, a DNA analyst testified that Defendant is the father of Victim's baby by a probability of 99.99 percent. The midwife testified that the baby would have been conceived between August 20, 2010 and September 1, 2010 when Victim was twelve years old.

## DISCUSSION

### I.     Impeachment of Defendant

**{5}**     Defendant first argues that he was improperly impeached with his prior second degree murder conviction that was over ten years old. Second, he challenges the State's use, under the guise of impeachment, of Defendant's letter to the district court, which questioned the results of a privately arranged DNA test, as an improper means of backdooring inadmissible evidence to the jury. Defendant seeks reversal of his convictions, arguing that the admissions of this evidence were not harmless error because those errors affected the jury's verdict. We address each argument in turn.

### A.     Standard of Review

**{6}**     "The admission or rejection of impeaching testimony going to the credibility of a witness is largely in the discretion of the trial court[.]" *State v. Buchanan*, 1966-NMSC-045, ¶ 10, 76 N.M. 141, 412 P.2d 565. "We review the trial court's evidentiary rulings for abuse of discretion[,]" which "occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it

as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citations omitted).

**{7}** "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110; *see also Scott v. Brown*, 1966-NMSC-135, ¶ 20, 76 N.M. 501, 416 P.2d 516 ("An appellate court does not correct harmless error."). We note that Defendant, here, is challenging an evidentiary error. "For purposes of harmless error review, violations of the rules of evidence are a non-constitutional error." *State v. Armijo*, 2014-NMCA-013, ¶ 13, 316 P.3d 902. "[A] non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (internal quotation marks and citation omitted). "[T]he reasonable probability standard requires a greater degree of likelihood that a particular error affected a verdict" than reasonable possibility standard for constitutional errors. *Id.* (internal quotation marks and citation omitted).

**{8}** In determining "the likely effect of the error, courts should evaluate all of the circumstances surrounding the error. This requires an examination of the error itself, which [may] . . . include an examination of the source of the error and the emphasis placed upon the error." *Id.* ¶ 43. Of course, evidence of a defendant's guilt separate from the error may often be relevant, even necessary, for a court to consider, since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings." *Id.* Courts may also examine "the importance of the erroneously admitted evidence in the prosecution's case," and "whether the error was cumulative or instead introduced new facts." *Id.* (alterations, internal quotation marks, and citation omitted).

**B.     Even if the District Court Allowed Testimony About Defendant's Prior Conviction in Error, It Was a Harmless Error**

**{9}** Defendant argues that the district court erred by allowing the State to impeach him with a prior second degree murder conviction that was over ten years old. During trial, after having provided prior written notice of its intention, the State informed Defendant and the district court that it planned to impeach Defendant with his 1989 conviction if Defendant were to testify that he did not have any convictions. The State further represented that it would not use the prior conviction if Defendant did not open the door with his testimony and that the State would seek a ruling from the district court prior to asking about any convictions. Defense counsel agreed that if Defendant opened the door, the prior felony conviction, without specifics, could be raised.

**{10}** After Defendant's direct examination, there was a bench conference to discuss this impeachment issue. Despite Defendant not having testified that he had never been convicted of past crimes, or otherwise having opened the door, the district court ruled that "given the fact that credibility is crucial here, [the court] will allow the State to ask the question but not specify the actual offense." The parties agreed that defense

counsel, and not the State, would ask Defendant about the prior conviction. Without waiving his objection, defense counsel continued his direct examination of Defendant.

Defense Counsel: You have a prior conviction, correct?
Defendant: Yes sir.
Defense Counsel: And this was—what year was it?
Defendant: It was in [19]87.
Defense Counsel: And, that was [not] for a sex crime though, was it?
Defendant: No sir.

**{11}** For purposes of our analysis of this issue, we assume without deciding that the district court erred in admitting evidence of Defendant's prior conviction under Rule 11-609(B) NMRA. *See State v. White*, 1994-NMCA-084, ¶ 14, 118 N.M. 225, 880 P.2d 322 ("Because we conclude that the error was harmless, we may assume, without deciding, that [the d]efendant is correct in his contention that there was error."). We begin by noting that Defendant is challenging an evidentiary error, which is subject to non-constitutional harmless error analysis on a case-by-case basis. *See Tollardo*, 2012-NMSC-008, ¶ 44. This includes a consideration of the evidence of Defendant's guilt and consideration of the facts and circumstances surrounding the alleged error. *See id.* ¶¶ 36, 43.

**{12}** Defendant argues that the introduction of Defendant's prior conviction was not harmless error because it was the only evidence presented of Defendant's criminal past and there was a reasonable probability that the conviction evidence affected the verdict. This was particularly noteworthy, Defendant argues, because some of the elements of the crime were decided purely based on the credibility of Defendant and Victim. The State contends that if there was any error that it was harmless because Victim testified "in great detail about [her] sexual encounters with Defendant" and the prosecutor asked no follow-up questions about the prior conviction, nor was it mentioned again. In essence, the State argues that, aside from the credibility considerations of Defendant and Victim, the evidence of Defendant's guilt was overwhelming. We agree.

**{13}** Here, the jury was presented with abundant evidence to convict Defendant. The jury instruction for CSP I required the State to prove beyond a reasonable doubt "[D]efendant caused [Victim] to engage in sexual intercourse; . . . [Victim] was a child under the age of thirteen (13); [and that it] happened in New Mexico on or between the 27th day of July, 2010 and the 8th day of September, 2010." The jury was presented evidence of the following: Victim became pregnant at the age of twelve, she gave birth to a child at the age of thirteen, and there was a 99.9 percent probability that Defendant was the father of Victim's child. Based on this evidence, it seems highly improbable that a brief mention of an unspecified prior conviction—one not involving sex abuse, as defense counsel made clear in his questioning—played any role in Defendant's conviction for CSP I.

**{14}** The jury instruction for CSP II required the State to "prove . . . beyond a reasonable doubt . . . [D]efendant caused [Victim] to engage in sexual intercourse;

[D]efendant threatened to hurt [Victim] or her family and [Victim] believed that [D]efendant would carry out the threat; [Victim] was at least thirteen (13) but less than eighteen (18) years old; [and that it] happened in New Mexico on or between the 8th day of September, 2010 and the 30th day of November, 2010." Again, the evidence at trial clearly demonstrated Defendant's guilt with respect to each of the elements. Victim testified that she felt that she had to have sexual intercourse with Defendant because he threatened to hurt her and her family. Victim also testified that she told a lie about what Defendant did to her because she was afraid that Defendant would carry out his threats. It also seems highly improbable that the brief mention of the prior conviction played any role in Defendant's conviction of CSP II.

**{15}** In addition, the circumstances surrounding the error indicate that Defendant's testimony about his prior conviction was nonspecific, and therefore less likely to influence the jury's determination. Defendant was only asked about the existence of a prior conviction, the year, and whether it was for a sexual offense, which it was not. The jury learned nothing about the type of crime or even that the nature of the past conviction was a felony. There was no follow-up questioning by either defense counsel or the State, nor was the conviction utilized as part of the closing argument. Moreover, the evidence of the prior conviction did not seem particularly important to the State's case, given that the State agreed to allow defense counsel to solicit the testimony from Defendant. Given that the State relied on Victim's testimony and other evidence of guilt to secure a conviction, we conclude that there is no "reasonable probability the error affected the verdict" convicting Defendant. *See Tollardo*, 2012-NMSC-008, ¶¶ 36, 43 (emphasis, internal quotation marks, and citation omitted); *see also State v. Serna*, 2013-NMSC-033, ¶ 25, 305 P.3d 936 ("We can conclude, therefore, that the [s]tate did not exploit the erroneously admitted [prior conviction] at trial, nor did it make the evidence a significant part of its case against [the d]efendant. Given the abundance of other evidence against [the d]efendant, the [s]tate simply did not need to do so."). In light of the harmless nature of the alleged error, we affirm Defendant's conviction on this ground.

## C. The District Court's Abuse of Discretion in Allowing Defendant to Be Impeached With a Letter He Wrote Was Also Harmless Error

**{16}** Defendant's original trial counsel told the district court during a pretrial conference that he was in the process of conducting an independent DNA paternity test through a private lab. Defendant later sent a letter to the court complaining about his counsel, who then moved to withdraw from the case. At trial, and before Defendant testified, the State sought a ruling on whether it could impeach Defendant with the DNA test attached to the letter. The State noted that, in the letter, Defendant claimed his original counsel tried to "rig or alter the [DNA] testing." The State argued that the letter was a statement by a party opponent that the State could use to impeach Defendant if he testified that he did not get testing done or that he was not the father of Victim's child. The district court reserved its ruling on the issue until it could hear Defendant's testimony.

**{17}** Defendant testified at trial, and the State sought to impeach Defendant's testimony with his letter and attached DNA test results, arguing that it was a statement of a party opponent, showing that DNA testing was done and confirming that Defendant was the father of Victim's child. Earlier in his testimony, on direct examination, Defendant testified that he had faith in the judicial system. The State argued that this testimony opened the door to impeachment because Defendant accused his counsel in the letter of doctoring the test results, thus contradicting the statement that he had faith in the system. The district court allowed the State to impeach Defendant with the letter.

**{18}** Defendant argues that the district court abused its discretion by allowing the State "to question [Defendant] about his letter to the court in a way that established the truth of the DNA test results." The State conceded that this evidence was inadmissible. While we are not bound to accept the State's concession, *see State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738 (stating that appellate courts are not bound by the state's concession), we agree that the State improperly used the letter for purposes of impeaching Defendant's testimony. We turn to our consideration of whether the nonconstitutional error was harmless.

**{19}** Defendant contends that the district court's error was not harmless because Defendant's letter "formed the basis of the [S]tate's theory of the case and narrative to the jury—that [Defendant's] and [Victim's] own family were in denial in the face of overwhelming scientific evidence of his guilt." Defendant argues that the State repeatedly brought up DNA and scientific evidence to prove that Defendant was the father of Victim's baby. The State argues, again, that the admission of the letter and attached DNA test was harmless because it merely confirmed that Defendant was the father of Victim's child. Again, we agree with the State that the error was harmless.

**{20}** Here, the prosecution relied on ample alternative evidence in the presentation of its case that formed the basis of its theory that Defendant committed the crimes of CSP I and II. *See Tollardo*, 2012-NMSC-008, ¶ 43 ("This requires an examination of the error itself, which . . . could include an examination of the source of the error and the emphasis placed upon the error."); *see also Serna*, 2013-NMSC-033, ¶ 25 ("Importantly, our review of the record shows that neither side placed much emphasis on the erroneously admitted evidence during trial."). For example, the State discussed scientific evidence throughout the trial in referring to the State's DNA test and corresponding results, which were corroborated by the State's DNA analyst. Any confirmation of Defendant having fathered Victim's child was merely cumulative, and thus less likely to affect the jury's verdict.

**{21}** Again, considering "the evidence of [D]efendant's guilt, separate from the error," *Tollardo*, 2012-NMSC-008, ¶ 43, there was ample evidence of Defendant's guilt. As such, there was no reasonable probability that the inadmissible evidence contributed to Defendant's conviction. After evaluating "all of the circumstances surrounding the error[,]" we conclude that there is no "reasonable probability the error affected that verdict." *Id.* ¶¶ 36, 43 (emphasis, internal quotation marks, and citation omitted).

Accordingly, we hold that it was harmless error for the district court to allow the State to impeach Defendant with his letter and attached DNA test results.

## II.     Jury Instructions

**{22}**     Defendant argues that the district court failed to instruct the jury that in order to find Defendant guilty of CSP II, it had to find that there was a causal link between Defendant's threats and him forcing Victim to engage in sexual intercourse. Because Defendant did not preserve this issue below, we review only for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *see also State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("Because [the d]efendant failed to preserve any error . . . we review only for fundamental error.").

### A.     Standard of Review

**{23}**     Fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Barber*, 2004-NMSC-019, ¶ 17. When this Court reviews jury instructions for fundamental error, we will only reverse the jury verdict if doing so is "necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). In reviewing a district court's failure to instruct, we must "determine whether a reasonable juror would have been confused or misdirected by the jury instructions." *Id.* ¶ 20 (alteration, internal quotation marks, and citation omitted). "[J]uror confusion or misdirection may stem . . . from instructions which, through omission . . . , fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. If we find error, we examine "the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Barber*, 2004-NMSC-009, ¶ 19 (internal quotation marks and citation omitted).

**{24}**     Jurors must be instructed on "all questions of law essential for a conviction of any crime submitted to the jury[,]" Rule 5-608(A) NMRA, and the failure to do so constitutes fundamental error. *State v. Osborne*, 1991-NMSC-032, ¶ 10, 111 N.M. 654, 808 P.2d 624. However, if it is clear that the evidence at trial established the missing element, the fact that the jury was not instructed on the element is not considered fundamental error. *See State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146 ("[W]hen a jury's finding that a defendant committed the alleged act, under the evidence in the case, necessarily includes or amounts to a finding on an element omitted from the jury's instructions, any doubt as to the reliability of the conviction is eliminated and the error cannot be said to be fundamental.").

### B.     The Jury Was Properly Instructed on the Crime of CSP II

**{25}** Consistent with UJI 14-956A NMRA, the jury was instructed as to all the essential elements of second degree criminal sexual penetration on a child thirteen to eighteen years of age, by force or coercion. The tendered jury instruction stated:

> [T]o find [D]efendant guilty of criminal sexual penetration of a child at least thirteen (13) but less than eighteen (18) years old by use of coercion by a person in a position of authority as charged in Count 2, the [S]tate must prove beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant caused [Victim] to engage in sexual intercourse;
> 2. [D]efendant threatened to hurt [Victim] or her family and [Victim] believed that [D]efendant would carry out the threat;
> 3. [Victim] was at least thirteen (13) but less than eighteen (18) years old;
> 4. This happened in New Mexico on or between the 8th day of September, 2010 and the 30th day of November, 2010.

**{26}** Relying on Section 30-9-11(E)(1), Defendant claims the district court committed fundamental error in failing to include causation as an element of CSP II, which the State is required to prove beyond a reasonable doubt. Defendant argues that this omission made it difficult to determine whether Defendant's threats were used to force Victim to engage in sexual intercourse or whether the threats were used to prevent her from reporting him. Because the tendered jury instruction put this distinction at issue, Defendant argues, the omission of causation would confuse "a reasonable juror by suggesting that they could convict [Defendant] if he had sex with [Victim] and later threatened her if she told anyone about the intercourse."

**{27}** Section 30-9-11(E)(1), in pertinent part, provides:

> Criminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated . . . by the use of force or coercion on a child thirteen to eighteen years of age[.] . . . Whoever commits criminal sexual penetration in the second degree when the victim is a child who is thirteen to eighteen years of age is guilty of a second degree felony for a sexual offense against a child[.]

Defendant argues that the current version of UJI 14-956A is flawed because it fails to adequately establish the requisite causal connection between Defendant's threat of physical violence and Victim engaging in sexual acts with him. Defendant contends that Victim's inconsistent testimony demonstrates that the causal link was in dispute. In support of this argument, Defendant points to UJI 14-942 NMRA, the jury instruction for CSP by force or coercion of an adult. *See* Section 30-9-11(F) ("Criminal sexual penetration in the third degree consists of all criminal sexual penetration perpetrated through the use of force or coercion not otherwise specified in this section."). Defendant argues that the tendered jury instruction omits the element that the jury must find that coercion was the cause of the sexual intercourse and therefore rendered an essential element of the crime ambiguous.

**{28}** At trial, the State presented testimony from Victim that she did not want to have sexual intercourse with Defendant, but that he threatened to hurt her and her family, and she believed his threats, so she had sexual relations with him. Defendant, for his part, testified that he did not threaten Victim. The question was before the jury—whether or not Defendant threatened Victim and if he did threaten her, what was his purpose for threatening her.

**{29}** Here, there is no fundamental error. The statute prohibits all criminal sexual penetration perpetrated by the use of force or coercion on a child thirteen to eighteen years of age. The tendered jury instruction required a finding that Victim was at least 13 years old but less than eighteen years old, that Defendant caused Victim to engage in sexual intercourse, and threatened to hurt Victim or her family, and Victim believed that Defendant would carry out the threat. The tendered jury instruction was not an inaccurate rendition of Section 30-9-11(E)(1). *See State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076 ("Uniform jury instructions are presumed to be correct."); *see, e.g.*, *State v. Simmons*, 2018-NMCA-015, ¶¶ 8, 12, 409 P.3d 1030 (rejecting the defendant's argument that the jury instruction for CSP II in the commission of a felony must contain a causal link between the felony committed and the CSP, and holding that no fundamental error occurred). A reasonable juror would not be confused by the instruction. The connection between Defendant's threats and the acts of CSP with a thirteen-year-old are so readily apparent that the CSP II conviction does not shock our judicial conscience. *See Simmons*, 2018-NMCA-015, ¶ 12 (determining that "a reasonable juror would not be confused by the instruction, and the connection between the associated felonies and the acts of CSP is so readily apparent that the CSP II-felony convictions do not shock the judicial conscience"). Nor do we find a "fundamental unfairness" in the tendered jury instruction. *See State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 ("Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." (internal quotation marks and citation omitted)).

**{30}** Defendant also contends that Victim's conflicting testimony that sometimes Defendant would sweet talk her into having sexual relations and other times he would threaten her "presented a question that should have been decided by the jury." Based on the flaws he perceives in the tendered jury instruction, Defendant argues that this factual determination was removed from the jury's consideration. We disagree. Defendant's complaints about any inconsistencies in Victim's testimony, the weight of the testimony, and her credibility were for the jury to determine and not for consideration on appeal. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). Accordingly, we hold that the district court properly instructed the jury on CSP II.

## CONCLUSION

**{31}** For the aforementioned reasons, we affirm Defendant's convictions.

**{32}** IT IS SO ORDERED.

M. MONICA ZAMORA, Chief Judge

WE CONCUR:

LINDA M. VANZI, Judge

J. MILES HANISEE, Judge