2006-NMCA-073
STATE OF NEW MEXICO, Plaintiff-Appellee,
v.
ROGER STEFANI, Defendant-Appellant.
Docket No. 24,477.
Court of Appeals of New Mexico.
Certiorari Denied, No. 29,809, June 12, 2006.
Filing Date: May 2, 2006.
Corrected June 29, 2006
Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.
John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

OPINION
BUSTAMANTE, Chief Judge.
{1} Defendant appeals his convictions for trafficking methamphetamine by manufacture, conspiracy to commit trafficking, and possession of drug paraphernalia. Defendant asserts that the district court erred in denying his request for a continuance, that the jury instructions were flawed, and the convictions were not supported by substantial evidence. We reverse and remand for further proceedings consistent with this opinion.

BACKGROUND
{2} Two police officers and an expert from the New Mexico Department of Public Safety's Southern Crime Laboratory testified to the following facts at trial. Officers Ron Mullins and Casey Mullins received information that there was a methamphetamine (meth) lab in Alfred Caballero's trailer. These two officers, along with other officers, went to Caballero's trailer to conduct a "knock-and-talk." When they arrived, there was a woman and a young boy outside the trailer. The woman, later identified as Defendant's wife, denied the officers permission to enter the trailer, stating that it was not her trailer. Officer Ron Mullins testified that he knocked on the door repeatedly before Caballero answered. The officers explained to Caballero that they received information about a meth lab in his trailer, and for public safety reasons requested permission to enter the trailer to look for a meth lab. After speaking to the officers, Caballero granted consent for two officers to enter the trailer, stating, "If there is a lab in here, it's not mine. I didn't bring anything in here of that nature."
{3} The officers entered the trailer, and found components of a meth lab in the kitchen. These components included a large jar with bi-layered fluids, other glassware, tubing, funnels, solvents, a hot plate, various chemicals, and a fan in the window. The officers also found a handkerchief containing glass pipes and syringes in the kitchen. Additional meth lab components were found in a box in the northern bedroom of the trailer, including muriatic acid, lighter fluid, a baggie containing red phosphorous, flasks, a funnel, and pills containing pseudoephedrine. A .22 caliber pistol was found in the living room, inside a stand-up speaker.
{4} During the search of the trailer, the officers located Defendant hiding in a closet in the southern bedroom. Defendant initially identified himself to the officers as "Justin," but was later correctly identified by one of the officers at the scene. The officers testified that pursuant to various safety regulations, all of the glassware associated with the meth lab was destroyed on site. The only materials that were examined by the laboratory for latent fingerprints were the bullets and the pistol, but no latent prints of value were found. No other items or containers were tested for fingerprints. A small amount of brown residue, scraped off a Pyrex dish, tested positive for methamphetamine. No other containers or supplies tested positive for methamphetamine.
{5} Caballero testified to the following at trial. Defendant's wife and child came to his house early in the morning on March 31, 2003, asking if they could come in and cook breakfast. Caballero was not feeling well, so he let Defendant's wife in, then went back to bed. Caballero woke up several hours later and went to his kitchen. At that time, Caballero saw Defendant and his wife in the kitchen cooking breakfast. Caballero noticed things on the kitchen counter that were not there when he had let Defendant's wife in several hours earlier. He assumed Defendant and his wife brought those things into his kitchen with them. Caballero then went back to bed, and did not wake up again until the police arrived at 7:30 p.m. that evening.
{6} Based on the preceding testimony, Defendant was convicted of trafficking by manufacture, contrary to NMSA 1978, § 30-31-20(A)(1) (1990); conspiracy to commit trafficking by manufacture, contrary to NMSA 1978, § 30-28-2 (1979) and § 30-31-20(A)(1); possession of drug paraphernalia, contrary to NMSA 1978, § 30-31-25.1(A) (2001); and concealing identity, contrary to NMSA 1978, § 30-22-3 (1963). Defendant does not challenge his conviction for concealing his identity.

DISCUSSION
{7} Defendant presents four issues on appeal. Defendant contends that (1) the district court erred in denying his motion for a continuance; (2) the jury instructions were fundamentally flawed by the failure to include an instruction on constructive possession and the inclusion of a general intent instruction; (3) failure of the jury instructions to delineate which items of evidence fell within the trafficking charge and which items fell within the possession of paraphernalia charge resulted in conviction of both crimes, thus offending principles of double jeopardy; and (4) there was insufficient evidence of each charge to support the convictions. We address each in turn.

1. Motion for Continuance
{8} Defendant contends that the district court erred in denying his request for a continuance. First, Defendant argues that the district court failed to exercise any discretion in denying the continuance by blindly following a "no continuances" policy. Second, Defendant argues that the district court's denial of the continuance violated his constitutional rights of confrontation and due process, to effective assistance of counsel, and to present a meaningful defense. Because we conclude that the district court abused its discretion in denying the continuance, we reverse on this ground. We do not reach the constitutional arguments or the ineffective assistance claims raised by Defendant.
{9} "The grant or denial of a . . . continuance [is] within the sound discretion of the [district] court, and the burden of establishing an abuse of discretion rests with the defendant." State v. Sanchez, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995). In exercising this discretion, there are a number of factors district courts should consider. State v. Torres, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. These factors include the
length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing [the] need for the delay, and the prejudice to the movant in denying the motion.
Id. (citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." State v. Rojo, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Furthermore, a defendant must establish not only that there was an abuse of discretion, but also that there was injury to the defendant in denying the continuance. State v. Nieto, 78 N.M. 155, 157, 429 P.2d 353, 355 (1967).
{10} Defense counsel raised three arguments in support of the continuance: the newness of the case, the complexity of the case, and the co-defendant's last minute plea agreement with the State on the morning trial was set to begin. The following facts support defense counsel's arguments.
{11} Defendant was indicted on April 24, 2003. Caballero was joined as a co-defendant the same day. Defendant was arraigned and pleaded not guilty on May 12, 2003. The attorney representing Defendant at the arraignment was Dennis Seitz, who on May 23, 2003, filed an Entry of Appearance. Notice of Trial was filed July 1, 2003, scheduling trial for August 20, 2003, with Defendant's case third on a trailing docket. An Order of Appointment filed July 15, 2003, stated that Kent Yalkut, a contract attorney with the Public Defender, shall represent Defendant. However, it appears from the record that Stephen G. Ryan, not Kent Yalkut, actually assumed representation of Defendant. Defendant's attorney, Ryan, filed a Demand for a Speedy Trial on July 17, 2003.
{12} The day before trial, the defense attorney learned that the case was set for 8:00 a.m. the following day, rather than third on a trailing docket. With the State's concurrence, Defense counsel filed a motion to continue on August 19, 2003, which was denied the same day. Defense counsel orally renewed and argued the motion to continue the next day at trial. Defense counsel argued that although the case had been assigned to the Public Defender thirty-three days before trial, assignment of the case was confirmed after some confusion only twenty-eight days before trial.
{13} Defense counsel also argued that the case was inherently complex. Defense counsel informed the district court that although discovery had been conducted, there were still eleven or twelve witnesses that needed to be interviewed, and the defense still needed to obtain an expert. Defense counsel further informed the court that there was an attempt to set up witness interviews the day before trial, but the interviews did not happen. Defense counsel notified the district court that he was unprepared to proceed to trial, and if forced to go to trial, Defendant would not get adequate representation. Defense counsel apprised the district court of some specifics regarding his lack of preparedness in light of the complexity of the case, including that he had not yet viewed any of the State's video or photographic evidence, and had not interviewed any of the police officers. Furthermore, defense counsel pointed out that possible defenses would be left unexplored if he were forced to go to trial immediately, including a possible search and seizure suppression issue and the State's destruction of all evidence and failure to obtain any fingerprints. Finally, defense counsel argued that because of the co-defendant's last minute plea the morning trial was set to begin and subsequent agreement to testify for the prosecution, defense counsel did not have adequate time to interview this witness.
{14} The State confirmed that defense counsel was on the phone the day before trial with the district attorney "constantly . . . trying to make sure they had everything and figure everything out." The State noted that defense counsel "really did make an effort" to prepare for trial. The State did not object to Defendant's request for a continuance and in fact expressed concern about the record made by defense counsel, although the prosecutor stated she did not want to do the trial twice.
{15} In denying the request for a continuance, the district court stated the following:
Well, that's fine. I appreciate everything that everyone's saying. Yesterday, of course, is the day before the trial.
Well, certainly, you're well prepared for the motion to continue. None of that was in the written motion. The written motion referred to a municipal court hearing and a magistrate court pretrial conference, which don't bump district court trials. Everybody knows that.
Everyone in this district, in the criminal division, including the attorneys I have here, have worked hard to get the docket to the place where a defendant is afforded the right to a trial within six months. That's what this whole batch of hard work, at least on my part, has been about. We're at a place now where we are beginning to try cases within six months, which is what the constitution requires.
[Thirty-three] days ago, counsel, you demanded a speedy trial. And this matter is set for trial. I frankly, Mr. Ryan, feel that you're an attorney who's highly competent and can do the job that's required of him. Whether you spread yourself so thin that's a problem, I don't know. But I consider you a highly competent attorney.
And the whole effort made by this Court for four solid years has been to get this in place and this docket in place for people like [Defendant] to get a trial within six months. And he's demanded a speedy trial.
The discovery has been available to you for [thirty-three] days. There is no reason this case shouldn't proceed to trial. Now, you've made a good and proper record, absolutely. So you may appeal on that issue. The Court of Appeals will do what they feel is appropriate. But the Court has been charged  and it's no secret this Court has been charged  by the Supreme Court to do something about the docket in this district, and that's what I've done. And at this point, I'm not going to start backing up and undoing it. So we'll go to trial, counsel.
We'll take the plea, and then I'll give you a few minutes to discuss this matter or interview Mr. Caballero, if he elects to be interviewed. That interview is going to have to be done after we pick the jury, but we'll take a long break there anyway. We always allow the parties to do that.
{16} This dialogue indicates that the district court based its decision to deny the continuance on concerns about granting Defendant a speedy trial and maintaining its docket. While these concerns are legitimate concerns of any court, other factors such as those identified in Torres must also be considered. See 1999-NMSC-010, ¶ 10 (listing factors district courts should consider in determining whether to grant a continuance). In this case, Defendant's motion for a continuance was the first continuance requested, and no amount of time for the continuance was specified. In fact, defense counsel was mindful of the district court's emphasis on maintaining its docket, and stated that he had worked hard and carefully to abide by the district court's "no-continuance[s]" policy in the past. Defense counsel also stated, "I don't ever try to get around the Court's policy [of no continuances] for reasons that are not good reasons. But in this case, it's compelling." Furthermore, there was no evidence presented that the delay would cause any other inconvenience to the parties or the court. In fact, the State did not oppose the continuance.
{17} We are unpersuaded by the district court's concern about Defendant's day-before-trial request for a continuance in this case. In March v. State, 105 N.M. 453, 455, 734 P.2d 231, 233 (1987), our Supreme Court rejected the notion that unwarranted delay is an overriding concern where there is an eleventh hour request for continuance by a public defender's office which has less than thirty days in which to prepare for trial. Defense counsel represented to the district court that he was unprepared to go to trial, that the case was relatively new to him, and complex, thus requiring additional time for preparation. In addition, on the day of trial, the co-defendant entered a plea agreement with the State and agreed to testify for the State. The fact that counsel was competent and worked hard to follow the court's no continuance policy was not disputed.
We will not attempt to establish a formula of how many days are required to adequately prepare for the defense of any specific charge. The nature of the offense, the number of witnesses, and the skill of the attorney are all variables to be taken into consideration in each case.
Nieto, 78 N.M. at 157, 429 P.2d at 355. Defense counsel established that failure to allow the continuance would prejudice Defendant by not allowing adequate time to explore or prepare an adequate defense.
{18} The district court's concern about trying criminal cases "within six months, which is what the constitution requires" is also misplaced. We take a moment to clarify the constitutional requirements for a speedy trial and the "six month rule." The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." State v. Hill, 2005-NMCA-143, ¶ 10, 138 N.M. 693, 125 P.3d 1175 (internal quotation marks and citation omitted). The right to a speedy trial "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." Id. ¶ 11 (internal quotation marks and citation omitted). The "six month rule" on the other hand refers to Rule 5-604(B) NMRA which requires, in relevant part, that the trial of a criminal case shall be commenced six months after either the date of arraignment or waiver of arraignment, whichever occurs later. See Rule 5-604(B)(1). "A six-month rule issue is analytically separate from a constitutional speedy trial issue," and the two are distinct in their operation and reach. State v. Eskridge, 1997-NMCA-106, ¶ 2, 124 N.M. 227, 947 P.2d 502. In this case, there was no risk of a six month rule violation or a speedy trial violation by defense counsel's request for a continuance. Only three months had elapsed from the time of arraignment to the date of trial. Furthermore, when the constitutional right to a speedy trial is at issue, delays attributed to Defendant weigh against the Defendant in later claims of violation. Id. ¶ 15. Defendants are required to make a demand for a speedy trial in order to assert the right at a later time. See State v. Urban, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061 (analyzing defendant's demands for a speedy trial as part of a constitutional speedy trial analysis). Town of Bernalillo v. Garcia, 118 N.M. 610, 612, 884 P.2d 501, 503 (Ct. App. 1994) (stating that "a defendant cannot take advantage of the right for a speedy trial unless a demand is made" (internal quotation marks and citation omitted)). However, in asserting this right, a defendant should not be forced to proceed to a speedy trial when he is justifiably unprepared to defend himself. We therefore are not persuaded by the district court's concerns, in this case, for possible violations of the six month rule or providing Defendant with a speedy trial.
{19} Taking all these factors into consideration, we hold that the district court, in an effort to follow a "no continuances" policy and maintain its docket, abused its discretion by denying Defendant's request for a continuance. The district court's reasoning in denying the motion for continuance was clearly against the logic and effect of the facts and circumstances of the case. The district court's concern for maintaining its docket was not sufficient in this context to support its decision. Defendant was clearly prejudiced by having to go to trial under the circumstances described by his counsel. Furthermore, we are concerned about the district court's seemingly rigid adherence to a no continuance policy. Strict adherence to such a policy would be an abuse of discretion for lack of exercising any discretion. We therefore reverse and remand for a new trial.
{20} Due to our conclusion that the district court abused its discretion in denying Defendant's request for a continuance, we are not required to address all of the other issues raised by Defendant. State v. Jojola, 2005-NMCA-119, ¶ 2, 138 N.M. 459, 122 P.3d 43, cert. granted, 2005-NMCERT-010, 138 N.M. 494, 122 P.3d 1263, and cert. granted, 2005-NMCERT-010, 133 N.M. 495, 122 P.3d 1264. We address the other issues raised by Defendant on appeal to the extent the issues may arise on remand. Furthermore, since Defendant would be entitled to a dismissal of the charges on remand if the evidence adduced at trial was insufficient to support the convictions, we are required to address Defendant's argument that there was not sufficient evidence to support the convictions. Id. We begin by addressing the jury instructions, then evaluate whether double jeopardy protections were violated, and conclude by reviewing the sufficiency of the evidence.

2. Jury Instructions
{21} Defendant argues the district court erred in failing to instruct the jury on constructive possession, when that was the defense's theory of the case, and including a general criminal intent instruction, thus rendering his convictions fundamentally flawed. Defendant argues that his theory of the case was that he did not constructively possess any of the items found in the meth lab because he was a mere visitor in the trailer. Therefore, Defendant argues that possession was at issue in both the trafficking by manufacture charge and the possession of paraphernalia charge. Defendant also argues that inclusion of the general criminal intent instruction was error because it confused the jury. We disagree.
{22} In State v. Benally,
The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction.
2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). Because the errors claimed by Defendant in this case were not preserved, we would normally review for fundamental error. However, since our aim here is simply to provide guidance for the parties on remand, we will review for simple error.
{23} The jury received the following jury instructions for trafficking by manufacture and possession of drug paraphernalia:
For you to find the defendant guilty of "trafficking a controlled substance by manufacturing" as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. The defendant manufactured methamphetamine;
2. The defendant knew it was methamphetamine;
3. This happened in New Mexico on or about the 31st day of March, 2003.
"Manufactured" means produced, prepared, compounded, converted or processed.
For you to find the defendant guilty of possession of drug paraphernalia as charged in Count 3, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. The Defendant had in his possession drug paraphernalia;
2. The Defendant intended to use the paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, re-pack, ingest, inhale or otherwise introduce into the human body, a controlled substance.
3. This happened in New Mexico on or about the 31st day of March, 2003.
{24} The instruction given on trafficking by manufacture tracks the language of UJI 14-3112 NMRA. Possession is not an element of trafficking by manufacture and therefore an instruction on possession was not required to be given with the instruction on trafficking by manufacture. However, possession is an element of possession of drug paraphernalia.
{25} Our Supreme Court recently addressed the issue of whether failure to include an instruction on possession amounts to fundamental error when possession is at issue in State v. Barber, 2004-NMSC-019, ¶ 13, 135 N.M. 621, 92 P.3d 633. In Barber, the defendant was charged with possession of methamphetamine with intent to distribute. Defendant's theory of the case, as in the present case, was that the drugs were not his and that he did not possess the drugs. Id. ¶ 6. The Court concluded that possession was an issue in dispute, and an instruction on possession would have been important to defendant's case and helpful to the jury in understanding the legal implications of mere proximity. Id. ¶ 12. The Court went on to hold that if the defendant had requested an instruction on possession, it would have been reversible error for the court to deny him. Id. The Court ultimately concluded that failure to give the instruction did not rise to the level of fundamental error. Id. ¶ 32.
{26} The Court's ruling as to reversible error applies to this case. Under Defendant's theory of the case, it would be error in the new trial not to give an instruction on possession.
{27} Defendant argues that the general criminal intent instruction given to the jury resulted in unnecessary confusion, thus allowing the jury to convict Defendant for acting "purposely" rather than with the required specific intent. Defendant contends that the effect of unnecessarily giving the general intent instruction is that the jury uses it to further define and elucidate the meaning of the word "intent" in the elements instructions, including those for specific intent crimes. Defendant, relying on State v. Baca, 1997-NMSC-059, ¶ 51, 124 N.M. 333, 950 P.2d 776, argues that the offenses of conspiracy to commit trafficking and possession of paraphernalia require that the Defendant have the specific intent "to do a further act or achieve a further consequence." (Internal quotation marks and citation omitted.) Therefore, according to Defendant, any guidance offered by the general intent instruction only served to mislead the jury as to what was required to prove intent. Defendant's argument that including the instruction on general criminal intent serves to mislead or confuse the jury as to what is required to prove "intent" is without merit, and has already been addressed and answered by this Court in State v. Gee, 2004-NMCA-042, ¶ 7, 135 N.M. 408, 89 P.3d 80.
{28} The jury received the general criminal intent instruction, consistent with UJI 14-141 NMRA. The instruction given reads:
In addition to the other elements of trafficking a controlled substance by manufacturing, conspiracy to commit trafficking a controlled substance by manufacturing, possession of drug paraphernalia, and concealing identity the [S]tate must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime. Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him.
{29} The Use Note following UJI 14-141, the general intent instruction, states that the "instruction must be used with every crime except for the relatively few crimes not requiring criminal intent or those crimes in which the intent is specified in the statute or instruction." Id. Use Note (1) (emphasis added). Furthermore, this Court inGee held that it is not fundamental error to give a general intent instruction where the crime charged is a specific intent crime. 2004-NMCA-042, ¶¶ 1, 9. Consistent with UJI 14-141, the Use Note following the instruction, as well as this Court's holding in Gee, we hold that there was no error in the use of the general criminal intent instruction. We next turn to Defendant's double jeopardy claim.

3. Double Jeopardy
{30} Defendant argues that the jury instructions were flawed because they did not delineate which items were considered within the trafficking by manufacture charge and which were considered in the possession of drug paraphernalia charge, resulting in conviction for both crimes based on the same evidence, thus violating double jeopardy. Defendant contends that as the instructions were given, possession of paraphernalia was a lesser included offense of the trafficking charge. Defendant contends that under Swafford v. State, 112 N.M. 3, 810 P.2d 1223 (1991), double jeopardy was violated by imposing multiple punishments for the unitary conduct of possession of paraphernalia and trafficking by manufacture.[1] Defendant argues that the conduct required to manufacture methamphetamine necessarily includes that the manufacturer possess the paraphernalia necessary to do so. Defendant contends that because the State's theory of the possession of paraphernalia charge was based on the same evidence presented on the trafficking by manufacture charge, double jeopardy is implicated.
{31} The arguments raised by Defendant fall under the category of double-description cases for double jeopardy analysis. Id. at 8, 810 P.2d at 1228. Swafford adopted a two-part test for determining whether the statutes at issue are the same offense for double jeopardy purposes: (1) "whether the conduct underlying the offenses is unitary;" and if so, (2) "whether the legislature intended to create separately punishable offenses." Id. at 13, 810 P.2d at 1233; State v. Franco, 2005-NMSC-013, ¶ 5, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). In Franco, our Supreme Court stated that determining whether the conduct is unitary is not necessarily determined by the State's legal theory, but rather depends on the elements of the charged offenses and the facts presented at trial. Id. ¶ 7. "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." Id.
{32} Applying this first part of the Swafford test to the present case, we conclude that the jury could reasonably have inferred independent factual bases for trafficking by manufacture and possession of drug paraphernalia. The jury could have found that Defendant produced, prepared, compounded, converted, or processed methamphetamine based on the evidence of the meth lab in Caballero's kitchen, and that Defendant possessed drug paraphernalia with the intent to plant, propagate, ingest, etc. based on the items found in the handkerchief, the pipe and syringes. See NMSA 1978, §§ 30-31-2, -20, -25.1. However, contrary to the State's assertion, we cannot discern with certainty that the jury found that Defendant made meth based on the items in the meth lab, and possessed paraphernalia by possessing the pipe and syringes. Defendant's concerns are thus not entirely misplaced. As Defendant points out, any possible double jeopardy concerns would be eliminated if the State had limited the scope of the possession charge to the items found wrapped in the handkerchief, the pipe and syringes, as separate from other items which made up the meth lab. The State may wish to do so on remand to avoid any double jeopardy concerns on retrial.

4. Sufficiency of the Evidence
{33} Defendant argues that the State presented insufficient evidence to prove, beyond a reasonable doubt, that he was guilty of trafficking by manufacture, conspiracy, and possession of paraphernalia. We review challenges to the sufficiency of the evidence under a substantial evidence standard of review. State v. Sutphin, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Salgado, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We review the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. State v. Apodaca, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). We then make the determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." Id. (internal quotation marks and citation omitted). We begin with the conspiracy charge.
{34} Conspiracy is defined as "knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2(A) (1979). To commit conspiracy, the statute requires proof of two mental states: (1) the "intent to agree" and, (2) "the intent to commit the offense that is the object of the conspiracy." State v. Trujillo, 2002-NMSC-005, ¶ 62, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). There must be an agreement between the parties to commit the felony, either through explicit or a mutually implied understanding. State v. Mariano R., 1997-NMCA-018, ¶ 4, 123 N.M. 121, 934 P.2d 315.
{35} In this case, the evidence falls short of establishing that Defendant conspired to commit trafficking by manufacture. The evidence presented at trial establishes that there was a meth lab in Caballero's kitchen and a box containing additional meth lab equipment in the northern bedroom. The evidence also establishes that Defendant was present, hiding in a closet in the southern bedroom, when the meth lab was discovered. Caballero, the owner of the trailer, was also present. This evidence places both Defendant and Caballero in the trailer where the meth lab was discovered, but does not establish the mental state required for conspiracy.
{36} The only evidence presented at trial regarding any criminal purpose or intent was the testimony of Caballero. Caballero testified that he was sick in bed on the day in question. He got up at 7:30 a.m. and let Defendant's wife and child into his trailer to cook breakfast, then went back to bed. He got up again at 10:30 a.m., and observed Defendant and his wife in the kitchen. At that time, he noticed things in the kitchen that did not belong to him and were not there before. He went back to bed, and did not wake up again until the police arrived at 7:30 p.m.
{37} Even viewing Caballero's testimony in the light most favorable to the State, at most it gives rise to an inference that Caballero knew about the meth lab and did nothing about it. But this testimony does not lead to an inference that Defendant had an agreement with Caballero. While Defendant had the intent to commit the offense of trafficking, nothing, other than Defendant's presence in Caballero's trailer, suggests that he had the intent to agree with Caballero to commit that offense. See Trujillo, 2002-NMSC-005, ¶ 62 (noting that the crime of conspiracy requires proof of both the intent to agree and the intent to commit the object offense).
{38} Viewing the evidence in the light most favorable to the prosecution, we conclude that there was insufficient evidence for the jury to find Defendant guilty of conspiracy beyond a reasonable doubt. We hold that on remand, Defendant may not be tried again on the charge of conspiracy to commit trafficking by manufacture. See State v. Gallegos, 2005-NMCA-142, ¶ 34, 138 N.M. 673, 125 P.3d 652 (nothing that "principles of double jeopardy would bar retrial if [a defendant's] convictions are not supported by substantial evidence"). Next, we review Defendant's convictions for trafficking by manufacture and possession of paraphernalia.
{39} The definitions for the charges of trafficking by manufacture and possession of paraphernalia, as well as the evidence presented at trial, are provided above, and we do not repeat them here. The testimony of the officers and the expert established that a meth lab existed in Caballero's trailer. Defendant does not deny the existence of the meth lab. There was also testimony from the officers and Caballero that Defendant was present in the trailer with the meth lab. Defendant does not deny his presence in the trailer. Furthermore, there was evidence that Defendant hid in a closet when the police arrived and concealed his identity from officers. Although Defendant contends this was because of an outstanding warrant in another county, the jury was free to believe or disbelieve this theory. Rojo, 1999-NMSC-001, ¶ 19 ("[T]he jury is free to reject Defendant's version of the facts."). Furthermore, the jury was free to draw inferences regarding the facts necessary to support a conviction, and here, the jury could infer that Defendant was engaged in the manufacture of methamphetamine and was in possession of drug paraphernalia. See State v. Higgins, 107 N.M. 617, 621, 762 P.2d 904, 908 (Ct. App. 1988) ("[A] material fact necessary to support a verdict may be proved by inferences."). Based on the foregoing evidence, we hold that there was sufficient evidence for the jury to convict Defendant of trafficking by manufacture and possession of drug paraphernalia. Therefore, Defendant may be retried on these charges on remand.

CONCLUSION
{40} For the foregoing reasons, we hold that the district court abused its discretion in denying Defendant's request for a continuance. We reverse the conviction for conspiracy to traffic methamphetamine by manufacture. We remand for retrial on the counts of trafficking by manufacture and possession of drug paraphernalia.
{41} IT IS SO ORDERED.
 __________________________________
 MICHAEL D. BUSTAMANTE, Chief Judge
 WE CONCUR:
 ________________________________
 CYNTHIA A. FRY, Judge
 ________________________________
 IRA ROBINSON, Judge
NOTES
[1] We note that Defendant did not request a "lesser included offense" instruction at trial or raise any objections to the jury instructions below. Furthermore, Defendant did not raise any double jeopardy concerns below.