This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-35668**

**BRIAN TORRES, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

{1}     Defendant Brian Torres, Jr. appeals his convictions for false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963); assault with intent to commit a violent felony against a household member (kidnapping), contrary to NMSA 1978, Section 30-3-14 (1995); unlawful taking of a motor vehicle, contrary to NMSA 1978, Section 30-16D-1(A)(1) (2009); and possession of methamphetamine, contrary to NMSA 1978, Section 30-31-23 (2011). Defendant argues on appeal that: (1) the district court committed fundamental error when it failed to instruct the jury on UJI 14-3130 NMRA (defining possession), and (2) the evidence was insufficient to support his convictions. We hold that there was no fundamental error in the instructions to the jury and that the evidence was sufficient to support Defendant's convictions. We therefore affirm.

**BACKGROUND**

{2}     Defendant and Gianna S. (Victim), met online and began a romantic relationship in October of 2013. They lived together in Colorado for several months before coming to San Juan County, New Mexico in early 2014. The incidents that form the basis for Defendant's convictions took place over the course of a week in February of 2014. Victim testified that the week before February 14, 2014, she told Defendant that their relationship was over, and Defendant informed her that he would

not let her leave. Victim did not believe that she could leave because Defendant had recently purchased a gun, and she was afraid he would use it.

**{3}** On February 13, 2014, Defendant and Victim drove to Farmington Lake around sunset, and her car got stuck in the sand. Victim could not call for help because Defendant had taken her phone and removed the SIM card, and Defendant refused to call for help on his phone. Defendant told Victim that he would kill her if she was unable to get the vehicle unstuck by 2:00 am, and at one point, pointed the gun at her. Victim testified that Defendant threatened to kill her four or five times that evening and that she believed him because he had a gun and was using drugs.

**{4}** Ultimately they were pulled out of the sand by some people in the morning and returned to Defendant's mother's home in Aztec. Victim testified that Defendant would not allow her into his mother's house, and threatened to tie her up, superglue her eyes and mouth, and to stab her, so she stayed in the car parked outside. Victim believed Defendant would carry out these threats because he had a gun and he had purchased super glue, rope, and a screwdriver several days earlier.

**{5}** Defendant and Victim then left with Victim driving. Defendant told her that if she turned right, towards a more populated area, he would shoot her, so she turned left. Defendant had the gun in his lap aimed at Victim and had his hand on the gun. Victim suggested that they drive to California to visit his daughter in an attempt to get

to a more populated area. Victim was able to drive to a gas station, where Defendant took the keys and locked her in the car. Victim unlocked the car and went inside to the restroom and bought some water in an attempt to stall for time. Victim then walked out of the gas station behind Defendant and immediately ran to some people in another vehicle and told them that Defendant had a gun and was going to kill her.

{6}     Witness Michael Veazey testified that he was at the gas station with his wife where he observed Defendant and Victim, who appeared to be arguing at an ATM machine. Defendant seemed angry and Victim seemed nervous. When Defendant and Victim left the gas station, Victim ran across the parking lot screaming that Defendant had a gun and that he was going to kill her. Victim jumped into Mr. Veazey's vehicle, pushing his wife from the passenger side into the middle. Mr. Veazey saw that Defendant appeared to be handling a gun and quickly drove away. Mr. Veazey described Victim's demeanor as he drove as "mortified." Both Victim and Mr. Veazey testified that Defendant followed them until Mr. Veazey was able to lose Defendant and rendezvous with police.

{7}     Defendant was arrested later that day driving Victim's vehicle. Police searched the vehicle and recovered a 9mm semi-automatic handgun, two boxes of 9mm ammunition, duct tape, rope, and super glue. At the detention facility, Officer Shaw

4

Eckstein patted down Defendant and found a baggie containing crystal methamphetamine behind Defendant's knee in between the two pairs of pants he was wearing. Defendant told Officer Eckstein that he thought he had gotten rid of the baggie because officers had already searched him.

**{8}** Defendant testified at trial and denied that he held Victim against her will or threatened her with a gun. Defendant's brothers also testified on his behalf. The jury ultimately acquitted Defendant of kidnapping, and convicted him of false imprisonment, assault with intent to commit kidnapping against a household member, unlawful taking of a motor vehicle, and possession of methamphetamine. This appeal follows. Additional facts are set forth below.

**DISCUSSION**

**Jury Instructions**

**{9}** Defendant argues that the district court erred by failing to include UJI 14-3130 in the instructions to the jury. Defendant did not object to the jury instructions given or tender an instruction of his own. Therefore, we review only for fundamental error. *See State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (stating that if error in the jury instructions was not preserved in the district court, the appellate court reviews the instructions for fundamental error rather than reversible error); *State v. Jimenez*, 2017-NMCA-039, ¶ 54, 392 P.3d 668 (explaining that if a party fails to

object to the jury instructions given we review only for fundamental error). "[F]undamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has been denied." *State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 (internal quotation marks and citation omitted).

**{10}** We first consider whether Defendant would have been entitled to UJI 14-3130, defining possession had he requested it. *See State v. Barber*, 2004-NMSC-019, ¶ 9, 135 N.M. 621, 92 P.3d 633 (stating that in a fundamental error analysis for failure to give a jury instruction, the first question is whether the defendant would have been entitled to the instruction had he requested it); *see also State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 ("The first step in reviewing for fundamental error is to determine whether an error occurred. If that question is answered affirmatively, we then consider whether the error was fundamental." (citation omitted)). UJI 14-3130 provides that "[a] person is in possession [of] . . . (name of substance) when he knows it is on his person or in his presence, and he exercises control over it." This is a definitional instruction and is not required to be given in all possession cases. Rather, the Use Note for UJI 14-3130 instructs that the definition should be given in cases where possession is in issue. *See also* UJI 14-

6

3120 NMRA (setting out the elements of possession and stating in the Use Note that UJI 14-3130 should be given if possession is in issue).

{11} The Use Note in UJI 14-3130 does not clarify when possession is in issue in a case. However, based on our review of the case law, we conclude that the definition of possession is required where the facts make it unclear whether it was the defendant who possessed the controlled substance, as in cases of constructive possession, or where the evidence would support a finding that the defendant had no knowledge of the controlled substance. *See Barber*, 2004-NMSC-019, ¶ 12 (determining that the failure to instruct on the definition of possession was error where there was evidence that the defendant did not possess the drugs or exercise control over them but was simply in proximity to them); *State v. Darkis*, 2000-NMCA-085, ¶¶ 14, 19, 129 N.M. 547, 10 P.3d 871 (stating that where the defendant testified that his friend handed him crack pipes and he had no idea they contained trace amounts of cocaine, possession was in dispute and the jury might have only convicted the defendant on the lesser offense of possession of paraphernalia); *see also State v. Gonzalez*, 2005-NMCA-031, ¶ 22, 137 N.M. 107, 107 P.3d 547 (discussing that the absence of an instruction on the element of knowledge of possession was not harmless error where the defendant testified at trial that he was not aware that the plastic bag of water he brought into the jail contained cocaine).

{12} Defendant argues that his knowledge of possession was at issue in this case, and the jury should have been instructed that "a person is in possession . . . when he knows it is on his person." Defendant relies on Officer Eckstein's testimony that Defendant said "he thought he had gotten rid of [the methamphetamine] because officers had searched him before he got to us." Defendant argues that this evidence suggested that he "was wholly unaware [that] he had drugs on his person [when] he was booked into custody." Accordingly, Defendant argues that a critical determination for the jury to make was whether he knew that he had drugs on him when he was patted down by Officer Eckstein.

{13} We disagree. We first reject Defendant's argument that the jury had to make a critical determination whether he knew he had methamphetamine on him at the moment he was booked into the detention center. The jury instruction on possession required the jury to find that Defendant possessed methamphetamine "on or about February 14, 2014." Proof of Defendant's subjective knowledge at the instant the drugs were discovered at the jail was not required for conviction.

{14} Additionally, Defendant's statement to Officer Eckstein does not suggest that Defendant lacked knowledge of the methamphetamine at the relevant time. To the contrary, Defendant's statement that he thought he had disposed of the drugs reflects that Defendant did have knowledge that he had methamphetamine on his person

8

earlier that day, but then formed the mistaken belief that he had gotten rid of it. Finally, we note that Defendant testified at trial and denied telling Officer Eckstein that he thought he had gotten rid of the drugs, but he did not deny knowledge of possession. Under these circumstances, knowledge of possession was not at issue, and an instruction defining possession was not required.

{15} Moreover, even if we were to assume that Defendant would have been entitled to the instruction defining possession if he had requested it, fundamental error did not occur in this case. *See Barber*, 2004-NMSC-019, ¶ 13 (stating that if the defendant would have been entitled to an instruction defining possession, we proceed to examine whether the failure to give the definition was fundamental error). Fundamental error analysis in this context begins with determining "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 19. Juror confusion or misdirection may stem "from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

{16} Defendant argues that the failure to give the definition of possession caused confusion because nothing communicated the mens rea to the jury. Defendant argues therefore, that it is possible that the jury convicted Defendant only because he had methamphetamine on his person. We disagree. The elements instruction on possession

required the jury to find that Defendant "knew [it] was [methamphetamine] [or believed it to be [methamphetamine] [or believed it to be some drug or other substance the possession of which is regulated or prohibited by law.]" *See* UJI 14-3120.

{17} Further, we will not find fundamental error, even where there is a failure to instruct on an essential element, where it is clear that the element was established by the evidence. *See State v. Herrera*, 2014-NMCA-007, ¶ 17, 315 P.3d 343 ("If it is clear that the missing element was established by the evidence at trial, the fact that the jury was not instructed on the element is not considered fundamental error."). In this case, the State presented evidence that the methamphetamine was found concealed on Defendant's person between two layers of pants. Additionally, Defendant testified that he was using methamphetamine, and that he had purchased methamphetamine at several locations prior to his arrest. Finally, the jury heard Defendant's statement that he believed he had gotten rid of the drugs, although that turned out not to be the case. This evidence clearly establishes Defendant's knowledge of possession, notwithstanding his statement that he formed the mistaken belief that he disposed of the drugs. *See State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 ("[W]hen there can be no dispute that the omitted element was established, fundamental error has not occurred and reversal of the conviction is not required.").

{18} For these reasons, we reject this assertion of error.

**Sufficiency of the Evidence**

{19}    We now turn to Defendant's argument that the evidence was insufficient to support his convictions raised, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1. "When reviewing a challenge to the sufficiency of the evidence, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Carpenter*, 2016-NMCA-058, ¶ 10, 374 P.3d 744 (internal quotation marks and citation omitted). "Substantial evidence is evidence acceptable to a reasonable mind as adequate to support a conclusion." *State v. Arrendondo*, 2012-NMSC-013, ¶ 10, 278 P.3d 517. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{20}    In order to convict Defendant of false imprisonment, the jury must have found beyond a reasonable doubt that Defendant restrained or confined Victim against her will and that he knew he had no authority to restrain or confine her. *See*

§ 30-4-3 ("False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so."). Defendant does not make a specific argument that the State's evidence was insufficient to establish the elements of false imprisonment. *See* Rule 12-318(A)(4) NMRA ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]"). Rather, Defendant points to his testimony that he did not restrain Victim and other evidence suggesting that Victim was free to leave at any time. However, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (*citing State v. Salazar*, 1997-NMSC-044, ¶¶ 44, 46, 123 N.M. 778, 945 P.2d 996); *see also State v. Singleton*, 2001-NMCA-054, ¶ 21, 130 N.M. 583, 28 P.3d 1124 (stating that "[f]alse imprisonment can be based on words, acts, or gestures and does not require physical restraint of the victim").

{21}    To convict Defendant of assault with intent to commit violent felony against a household member, the jury had to find:

(1)    [D]efendant pulled out a gun and threatened to kill [Victim] if she tried to leave him;

12

> (2) [D]efendant's conduct caused [Victim] to believe [D]efendant was about to intrude on [Victim's] bodily integrity . . . or personal safety by touching or applying force to [Victim] in a rude, insolent, or angry manner;
>
> (3) A reasonable person in the same circumstances as [Victim] would have had the same belief;
>
> (4) [D]efendant intended to commit kidnapping on [Victim]; [and]
>
> (5) [Victim] was a household member of [D]efendant.

*See* UJI 14-381 NMRA. The jury was given instructions defining "household member" to include "a person with [whom] the person has or had a continuing personal relationship" and a definition of "[c]ontinuing personal relationship" to mean "a dating or intimate relationship." *See* UJI 14-370 NMRA (defining household member and continuing personal relationship).

{22} Again, Defendant does not argue that the State's evidence was insufficient to establish any element of this offense. Rather, Defendant argues that, because the jury acquitted him of kidnapping, it necessarily found that he did not intend to commit kidnapping, which is a required element of assault with intent to commit kidnapping. However, as an appellate court, "we do not entertain contentions alleging that the verdicts are irreconcilable." *State v. Roper*, 2001-NMCA-093, ¶ 24, 131 N.M. 189, 34 P.3d 133; *see also State v. Fernandez*, 1994-NMCA-056, ¶ 39, 117 N.M. 673, 875 P.2d 1104 ("[W]e review the verdict of conviction, not the verdict of acquittal.").

13

{23} To convict Defendant of unlawful taking of a motor vehicle, the jury had to find beyond a reasonable doubt that Defendant took a motor vehicle intentionally and without the owner's consent. *See* § 30-16D-1 (defining unlawful taking of a motor vehicle). This conviction was supported by Victim's testimony that Defendant took her car after she escaped him at the gas station, and that she did not give him permission to take her car. Defendant argues that he reasonably believed that he had permission to drive the vehicle based on the context of their relationship. However, a rational jury could infer that Defendant knew he did not have consent to drive Victim's vehicle from the evidence of his threats to harm her and the circumstances of her escape from him at the gas station. *See State v. Stefani*, 2006-NMCA-073, ¶ 33, 139 N.M. 719, 137 P.3d 659 ("We review the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict.").

{24} Finally, to convict Defendant of possession of methamphetamine, the State was required to prove that Defendant had methamphetamine in his possession, and knew that it was methamphetamine or believed it to be some drug or other substance, the possession of which is regulated or prohibited by law. *See* UJI 14-3102 NMRA. Defendant again argues that the evidence was insufficient to show that he knew he possessed methamphetamine. However, evidence that Defendant had

14

methamphetamine concealed on his person, his admissions to buying and consuming methamphetamine, and his statement that he believed he had gotten rid of the methamphetamine are sufficient to meet the State's burden to show knowledge. *See State v. Ortiz*, 2017-NMCA-006, ¶ 23, 387 P.3d 323 (noting that knowledge and intent may be proved by circumstantial evidence).

**CONCLUSION**

{25}    For these reasons, we affirm Defendant's convictions.

{26}    **IT IS SO ORDERED**.


_____

**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____

**JULIE J. VARGAS, Judge**


_____

**HENRY M. BOHNHOFF, Judge**