This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40742**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PATRICIO A. ALMAGER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**     This matter was submitted to this Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**{2}**     Defendant appeals from the district court's judgment and sentence, convicting him of aggravated assault with a deadly weapon. On appeal, Defendant contends: (1) insufficient evidence was presented to support his conviction [BIC 24-29]; (2) the district court erred by denying his two motions for a continuance [BIC 14-24]; and (3) the district court erred by denying his motions for a new trial [BIC 29-31].

**{3}**     Defendant maintains that the State failed to adequately prove he had or brandished a deadly weapon. [BIC 24-29] Defendant complains that the only evidence of aggravated assault was the victim's statements to police and testimony at trial, which contained discrepancies about the alleged knife that was never recovered. [BIC 25]

**{4}**     When assessing the sufficiency of the evidence, "we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). We disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "We then determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted).

**{5}**     Relative to Defendant's challenge to the sufficiency of the evidence to prove that he had and brandished a deadly weapon, the jury instruction for aggravated battery with a deadly weapon required the jury to find that Defendant pulled out a knife and brandished it toward Victim during a physical altercation and that the knife Defendant used was a deadly weapon. [RP 94] The jury instruction explained that the knife could be found to be a deadly weapon only if the jury found that the "knife, when used as a weapon, could cause death or great bodily harm." [RP 94] *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

**{6}**     In the current case, the following evidence was presented. The incident at issue occurred at the home of Ms. Shelby, where Victim and his sister, Ms. Lopez, who was Defendant's girlfriend, resided along with Ms. Lopez's four children. [BIC 1] Defendant's relationship with Ms. Shelby and Victim was rocky. [AB 2] Although Ms. Shelby had told Defendant not to come onto her property, he spent the night on her property in a camper trailer near the front porch of her house. [AB 5-3] The next day, Victim confronted Defendant about his continued unwanted presence on the property and about Defendant's mistreatment of Ms. Lopez's children, ranging in age from three to sixteen years old. [AB 3] As he confronted Defendant, Victim picked up his three-year-old nephew to move him out of the way and onto the porch, at which time Defendant unexpectedly "sucker punched" Victim in the face. [AB 3-4] This caused Victim to fall down with the child in his arms. [AB 4] Victim got up to defend himself, and tried to

punch Defendant back, when Defendant pulled a large-bladed knife on him and flipped open the blade with a thumb notch. [AB 4, 8-9] Victim immediately retracted and fell over the child. [AB 4] Victim testified that he feared for his safety and that of the child, and started throwing things, anything he could, at Victim, including a baby bike, toys, rocks, and miscellaneous objects until Defendant finally left. [AB 4-5]

{7}     Relative to the knife that the State argued was used by Defendant, Victim testified that the weapon was a flip-open, folding knife with a brown handle and a black blade that may have had a silver sheen to it. [AB 4, 8] Victim testified that the blade was about five-and-a-half inches long and demonstrated the length of the knife to the jury using hand motions. [AB 8] As reflected in the responding officer's lapel camera video, while being interviewed at the scene, Victim and his mother both excitedly used hand motions to describe the size of the knife and both held their hands apart at approximately eight to ten inches apart. [AB 8-9]

{8}     Defendant complains that there were discrepancies between Victim's statements to the responding officer and in pretrial interviews and Victim's testimony at trial about the color of the blade, and discrepancies between what Victim told the responding officer and what the responding officer wrote in the police report about the color of the blade. [BIC 6-7, 23, 26] Victim told the responding officer that the knife Defendant used had a brown handle and a "big long silver blade"; but, he testified at trial that it had a black blade that may have had a silver sheen to it. [BIC 8, 26; AB 4, 8] The responding officer wrote in his police report that Victim described the knife as having a tan handle and a black blade. [BIC 26] The responding officer testified that he was familiar with Defendant's black-bladed knife from a previous encounter and remembered it due to its high quality and the officer's personal interest in knives. [BIC 5, 28] The responding officer and Victim offered the same possible explanations for Victim's initial mistake in his description of the knife: Victim had heightened adrenaline from the encounter with Defendant or the sun might have gleamed off the blade. [BIC 5-6] Defendant surmised that the description of the knife came from the responding officer's prior knowledge, not Victim's account, and Victim was influenced by the responding officer's report before trial or there was possible witness tampering. [BIC 27] In response to Defendant's concern, the district court permitted defense counsel to question Victim about any contact he may have had with the responding officer between the in-camera hearing and trial. [BIC 27]

{9}     Defendant's arguments about the discrepancies in the witnesses' statements about the knife present matters of credibility and weight to be given to the evidence. It is for the jury to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie. *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482; *see also Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts."). Defendant's complaints about the evidence concerning the knife also raise no concerns about the evidence that consistently described the knife's size or its potential to cause great harm or death when used as a weapon. The evidence showed that the knife was between eight to ten inches with

about a five-and-a-half-inch blade. The evidence further showed that Defendant pulled the knife on Victim while in close range and flipped open the long blade in the course of their physical altercation, which began when Defendant "sucker punched" Victim who was holding a child. [AB 3-4] Victim testified that when Defendant pulled the knife on him, it caused Victim to fear for his life and for the safety of the child. [AB 4] It is clear from this evidence that Defendant used the knife in a threatening manner as a weapon in close proximity to Victim and that under the circumstances the knife was capable of causing serious bodily harm or death. *See State v. Padilla*, 1996-NMCA-072, ¶ 7, 122 N.M. 92, 920 P.2d 1046 (noting parenthetically that even a small knife with a two-inch blade could be considered a deadly weapon depending on its actual use and that the kind, character, and use of a knife may render it a deadly weapon).

**{10}** Based on the foregoing, we hold that the evidence was sufficient to support Defendant's conviction for aggravated battery with a deadly weapon. *See State v. Roybal*, 1992-NMCA-114, ¶ 9, 115 N.M. 27, 846 P.2d 333 (showing that the testimony of a single witness constitutes sufficient evidence to uphold a conviction); *State v. Maes*, 1970-NMCA-053, ¶ 24, 81 N.M. 550, 469 P.2d 529 ("[A] defendant may be convicted on the uncorroborated testimony of the victim of the crime.").

**{11}** Defendant also argues that the district court erred by denying his two motions for a continuance [BIC 14-24] Defendant's first motion was filed two days before the jury trial was set and sought to add new defense witnesses who would purportedly refute Victim's claims. [BIC 9; AB 10] The State points out that in district court Defendant never stated how many witnesses he wished to add, never identified any of the witnesses, never explained how their testimony might refute Victim's account, never offered justification why the witnesses had not been discovered or disclosed earlier, and never identified any particular length of delay needed to add the new witnesses. [AB 10-11, 16, 27-33] To the extent Defendant complains that the district court failed to apply the factors for a continuance set forth in *State v. Torres*, Defendant contributed to this error by not mentioning the *Torres* factors in district court and by not providing sufficient information for the district court to meaningfully apply the *Torres* factors and evaluate possible prejudice. *See* 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20; *see also State v. Salazar*, 2007-NMSC-004, ¶ 16, 141 N.M. 148, 152 P.3d 135 (explaining the *Torres* factors and the consideration of prejudice).

**{12}** The *Torres* factors used to consider a motion for continuance include:

> [T]he length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for delay, and the prejudice to the movant in denying the motion.

1999-NMSC-010, ¶ 10. "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with

the defendant." *Salazar*, 2007-NMSC-004, ¶ 10. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

{13}    Because Defendant did not identify the witnesses or the number of witnesses or explain how those witnesses would refute the State's evidence or why Defendant had not identified the witnesses earlier, there was no way for the district court to assess the length of delay required, the degree of inconvenience the continuance would cause, the legitimacy of Defendant's motives, the likelihood that the continuance would assist the defense, or the prejudice that would result from the denial of a continuance. The district court knew only that there were no previous continuances granted, defense counsel had not contacted the unidentified witnesses, and that the defense took responsibility for causing the need for the delay. [AB 10-11, 16] With this sparse showing, we cannot say the district court abused its discretion in denying Defendant's first motion for continuance. *See State v. Hildreth*, 2022-NMSC-012, ¶¶ 33-34, 506 P.3d 354 (stating that it could not say the district court improperly denied the motion for a continuance where the defendant did not know whether the state's late-disclosed CD contained exculpatory material, but where there had been no previous continuances, because so many factors were not known by the district court at that time).

{14}    In Defendant's second motion for a continuance in this case, sought on the morning of trial, Defendant sought to delay trial to vet and admit a video taken by an eye witness on the day of the incident, along with two new witnesses who could lay a foundation for the video to be admitted at trial, and to provide the video to the prosecutor. [BIC 10-24] The video recording was taken by one of Ms. Lopez's teenaged children, who was in the residence when the alleged assault against Victim was taking place in the front yard. [BIC 2, 11; AB 37] Defense counsel told the district court that the video was in one of the teenagers' social media posts, it was given to counsel in the courthouse by Defendant and Ms. Lopez on the morning of trial, and that defense counsel did not have a valid answer why Defendant did not disclose it earlier. [BIC 10; AB 12-13] Defense counsel explained that the video shows Victim throwing rocks at Defendant and is probative of Victim's actions and demeanor during the incident. [BIC 10, 22]

{15}    Again, we note that Defendant did not mention or discuss the *Torres* factors when seeking a continuance for matters related to the video evidence or the witnesses. [AB 24] We also note that this late-disclosed video recording showed only events that occurred *after* Defendant's alleged assault on Victim, when Victim was throwing things at Defendant to get Defendant to leave the residence. [AB 12-13] We see no abuse of discretion in the district court's denial of the continuance under the *Torres* factors and refuse to presume from the absence of findings in the record that the district court failed to consider appropriate matters or otherwise abused its discretion. *State v. Gonzales*, 1999-NMCA-027, ¶ 11, 126 N.M. 742, 975 P.2d 355 ("No rule of criminal procedure requires the district court to set forth the factual basis of its decision."); *State v. Stefani*,

2006-NMCA-073, ¶¶ 9, 13-17, 19, 139 N.M. 719, 137 P.3d 659 (applying the *Torres* factors in the absence of a district court ruling as to each factor and concluding that a "no continuance" policy was an abuse of discretion).

**{16}** Again, Defendant did not specify the length of the delay sought or address the degree of inconvenience to the parties or the court. *See Torres*, 1999-NMSC-010, ¶ 10. However, we have consistently determined that there is a presumption of inconvenience when a continuance is requested on the day of trial. *See State v. Gonzales*, 2017-NMCA-080, ¶ 36, 406 P.3d 534 ("[W]e presume resetting the trial date on the day trial is supposed to begin is inconvenient for the parties and for the court."); *State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021 ("[A]s a general rule, a motion for a continuance filed at the last minute is not favored."). Defendant also did not establish that the video, taken after the incident, would cast doubt on Victim's version of events. In fact, Victim testified that he threw rocks and any other objects he could find to drive Defendant away. [AB 4-5] Thus, Defendant does not establish that a continuance would achieve his goal or that the denial of motion would prejudice his defense.

**{17}** We are also not persuaded that the reason and motives for the delay weigh in Defendant's favor. Defense counsel's admission that there was no valid reason for the late disclosure of the video evidence implies Defendant's fault in causing the need for the delay.

**{18}** Although there were no previous continuances, we cannot say the district court abused its discretion in denying Defendant's second motion for a continuance where the inconvenience of rescheduling trial on the day of trial is clear, the amount of delay needed was unknown, the fault for the seeking delay was Defendant's, and there was a weak and speculative showing that the evidence would benefit Defendant and that denial would prejudice his defense. *Cf. Hildreth*, 2022-NMSC-012, ¶¶ 33-34. Thus, we affirm the district court's denial of the continuance.

**{19}** Lastly, Defendant argues that the district court erred by denying his motions for a new trial on the basis of newly discovered evidence. [BIC 29-31] The evidence alleged to be newly discovered was the video evidence for which the district court denied a continuance on the morning of trial. [RP 149-50, 160-61; BIC 29-31] The district court denied the motions under Rule 5-614(C) NMRA on grounds that they were not based on the discovery of new evidence and they were not timely filed within ten days after the verdict was entered. [BIC 29; AB 15]

**{20}** "Generally, an appellate court will not disturb the district court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Bryant*, 2023-NMCA-016, ¶ 39, 525 P.3d 367 (alteration, internal quotation marks, and citation omitted), *cert. denied*, 2023-NMCERT-002 (S-1-SC-39550). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted).

**{21}** A motion for a new trial on the basis of newly discovered evidence must be based on evidence discovered since the trial; it must not have been discoverable before trial by the exercise of due diligence; it must be material, likely to change the result, and not merely cumulative, impeaching, or contradictory. *State v. Garcia*, 2005-NMSC-038, ¶ 8, 138 N.M. 659, 125 P.3d 638. As we set forth in our discussion of the denial of a continuance for the video evidence, the video evidence was known prior to trial, was likely discoverable even before the morning of trial, was cumulative of Victim's testimony admitting that he threw rocks and other things at Defendant after the incident, and was not likely to change the result because it did not depict the incident itself or events leading up to the incident. For these reasons, we are not persuaded that the district court abused its discretion by ruling that the evidence was not newly discovered. *See Bryant*, 2023-NMCA-016, ¶ 40 (affirming the denial of a motion for a new trial where the evidence was known prior to trial).

**{22}** Where a motion for a new trial is not based on newly discovered evidence, the motion must be filed within ten days of the verdict. *See* Rule 5-614(C). In the current case, Defendant's self-represented motion for a new trial was filed two months after the verdict [RP 119, 149-50], and defense counsel's motion for a new trial was filed over three months after the verdict [RP 119, 160-61]. As a result, the motions were untimely. For these reasons, we affirm the district court's denial of the motions for a trial.

**{23}** Based on the foregoing, we affirm the district court's judgment and sentence.

**{24} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**